HENRY W. COWLES & another *vs.* MARIETTA MERCHANTS.

Hampshire. Sept. 16, 1885. — Jan. 5, 1886. FIELD, C. ALLEN, & GARDNER, JJ., absent.

During the trial of a writ of entry brought by the heirs at law of a man who had conveyed the land in controversy against the grantee, a juror was accosted on the street by a man whose faculties were known to be impaired by reason of his advanced age, and who did not know that the person to whom he spoke was a juror, and asked what case was on trial. On being informed, he said he thought the man had a right to do as he did; that it was too common in these days, after a man was dead, for the widow or heirs to question his right to dispose of his property; and that he did not care how many witnesses there were, or what the evidence was, it would not change his mind about the deed standing. The jury returned a verdict in favor of the tenant. *Held*, that the presiding judge was not required, as matter of law, to set aside the verdict.

On the issue whether the making of a deed was induced by undue influence, it was contended that the deed was a secret transaction; and a witness to the deed testified, on cross-examination, that, before the death of the grantor, she had not said anything to anybody, except her husband, about the making of the deed. *Held*, that the evidence was immaterial, and that no exception lay to the exclusion of evidence to contradict the witness.

A witness who is not an expert cannot be asked his opinion as to the mental capacity of a person at a certain time.

WRIT OF ENTRY, dated November 11, 1884, to recover a parcel of land in Amherst. Plea, *nul disseisin*. Trial in the Superior Court, before *Barker*, J., who allowed a bill of exceptions, in substance as follows:

The demandants are the heirs at law of Erastus Cowles, who died on October 28, 1884, intestate, being then seventy-one years and nine months old. His wife died in 1861. The tenant claims under a deed from Erastus Cowles, dated August 28, 1884, and

purporting to be "in consideration of one dollar, and other good and valuable consideration, rendered and paid" by the grantee.

Erastus Cowles for over thirty years before the date of this deed was seised and possessed of the land in question, it being his homestead.

The demandants contended that the deed was a secret transaction. There was no evidence that there was any injunction of secrecy placed upon the witnesses to the deed, but Mr. Dickinson, one of the witnesses to the deed, on cross-examination, said that he might have told Mr. Clark, the insurance agent, the day after the deed was made, at the time he took the insurance policies to him, at the request of Mr. Cowles, to have the assent of the company to the transfer of said policy, that "they did not care to have anything said about it."

There was evidence tending to show that a neighbor (Mrs. Howland), who knew that something had been done, but did not know that a deed had been made, said to Mrs. Marsh, one of the witnesses to the deed, about a week before Mr. Cowles's death, that she hoped that, if any compensation had been given Mrs. Merchants, money would be given her instead of anything else. Mrs. Marsh said she did not feel at liberty to tell what had been done. Mrs. Carrie F. Dickinson, one of the witnesses to the deed, on cross-examination, said that she had not, prior to Mr. Cowles's death, said anything to anybody except her husband about making the deed.

The demandants called Edwin W. Clark, the insurance agent, and offered to prove by him that, on the second day after the deed was given, he met Mrs. Carrie F. Dickinson; that the matter of the insurance and the deed was spoken of between them, and that she requested him to say nothing about the deed and the transaction. The judge excluded the evidence.

The demandants contended, and there was evidence tending to show, that Erastus Cowles, at the time he executed the deed, had not sufficient mental capacity to do the act, but was insane, and not of sound and disposing mind and memory; that he was then in such a weak and feeble condition of mind and body as to be easily influenced; and that the deed was procured by the undue influence and fraud of the tenant. There was evidence on the part of the tenant tending to show that Mr. Cowles was

of sound and disposing mind, and that he executed the deed of his own volition, and without any undue influence from any one.

The demandants called Henry C. Graves, who testified to doing certain work at the Cowles house in the spring of 1884, and that he had lived in Amherst for several years, and knew Erastus Cowles well during that time, and had met Mr. Cowles near the time of the execution of the deed, both before and after. He was asked the following question by the demandants: "If you have an opinion as to the mental condition of Erastus Cowles on August 28, 1884, founded upon facts and circumstances within your personal knowledge, state what that opinion is, and the facts and circumstances upon which it is founded." The judge excluded the question.

The jury returned a verdict for the tenant; and the demandants alleged exceptions.

After the verdict, the demandants filed a motion for a new trial on account of the alleged misconduct of one of the jurors. A hearing was had upon the motion; and the judge found the facts to be as follows:

During the trial, and before the close of the evidence, Emerson Searle, a juror, residing in Northampton, had occasion to go from the post-office across the street to a store, upon private business, at a time in the day when the court was not in session. He crossed the street alone, and upon the sidewalk met two persons, one of whom was Charles Smith, the other Dr. Thomas Gilfillan. Neither of these persons knew that Searle was a juror, and neither of them was in any way engaged or interested in the case or the parties, or acting for or in behalf of either party. Charles Smith was about eighty years of age, had a store near where the meeting occurred, and was well known as a man whose faculties were much impaired by his advanced age. Searle did not seek any conversation with either Smith or Gilfillan, but, upon being accosted by Smith, stopped, was made known by Gilfillan to Smith, who did not recognize him, and was asked by Gilfillan what case was on trial in court. Searle replied, that it was the case of Cowles against Merchants; and Gilfillan asked if that was the case where the man deeded the property to the woman who took care of him. Searle replied, "Yes," and thereupon Smith said, in substance, that he thought the man had

a right to do what he did; that it was too common in these days, after a man was dead, for the widow or heirs to question his right to dispose of his property, and that he did not care how many witnesses there were, or what the evidence was, it would not change his mind about the deed standing. Searle made no reply, and took no further part in the conversation than as above stated, and moved off alone about his own business. Searle had no improper motive in anything which he did upon the occasion, and neither Gilfillan nor Smith had any intention to interfere with the administration of justice.

The conversation was partially overheard by an eavesdropper, who stood at such a distance as to catch incorrectly some portions of it, and who reported what he thought he heard to some person, who, after the trial, reported it to the demandants' counsel.

The demandants asked the judge to rule, as matter of law, that any conversation had by an outside person with, or in the hearing of, a juror during the trial of a cause, the natural or reasonable effect of which would be to affect the mind of such juror, would require the setting aside of a verdict and the granting of a new trial. The judge declined so to rule; and ruled that, upon the foregoing facts, he was not required, as matter of law, to set aside the verdict and grant a new trial; and, being of the opinion that the interests of justice did not demand that the verdict should be set aside and a new trial granted, overruled the motion. The demandants alleged exceptions.

*C. C. Conant & S. D. Conant*, for the demandants.

*D. W. Bond*, for the tenant, was not called upon.

W. ALLEN, J. The only question relating to the motion for a new trial is, whether the judge properly ruled that he was not required, as matter of law, to set aside the verdict on account of the remarks made to, or in the presence of, the juror Searle.

The remarks were made by a person not in any way connected with the case, who did not know that he was speaking in the presence of a juror, and who was well known as a person whose faculties were much impaired by his advanced age. There was no improper intermeddling with the juror, and no misconduct on the part of the juror; it was hardly more than a casual remark accidentally overheard by a juror in the street, and not

calculated to influence his mind. The ruling of the judge was right. *Johnson* v. *Witt*, 138 Mass. 79.

The question put to Mrs. Dickinson, a witness to the deed, if she had not said anything about making the deed to any one except her husband, was immaterial, and could not be contradicted. The fact, that, two days after the deed was executed, she conversed about it with the insurance agent, and requested him to say nothing about it, was immaterial, and evidence of it was properly excluded. The tenant could not be affected by these mere declarations of the witness.

The question put to the witness Graves was excluded in accordance with the well settled law in this Commonwealth recently reaffirmed in *Commonwealth* v. *Brayman*, 136 Mass. 438. See *May* v. *Bradlee*, 127 Mass. 414 ; *Hastings* v. *Rider,* 99 Mass. 622, and cases cited.                    *Exceptions overruled.*