SKEEN v. SKEEN.

No. 4748.   Decided April 25, 1930.   (287 P. 320.)

*E. A. Rogers,* of Salt Lake City, for appellant.

*C. R. Hollingsworth,* of Ogden, and *Joseph R. Haas,* of Salt Lake City, for respondent.

CHERRY, C. J.

The plaintiff brought this action against the defendant to recover $6,370.97, alleging "that at Ogden, Utah, on January 8, 1920, the defendant received the sum of $5,000.00 from the plaintiff to and for the use of the defendant and which sum the defendant then and there agreed to pay to the plaintiff at Ogden, Utah, in ninety days thereafter with interest thereon at the rate of eight per cent per annum from January 8, 1920." It was further alleged that the defendant had made certain specified partial payments of interest and principal amounting to $1,669 reducing the amount of the indebtedness to that sued for.

The defendant by his answer denied the receipt of any sum of money from the plaintiff and any agreement to pay any sum to plaintiff for money received from him. The defendant denied that he had made any payments on any indebtedness to the plaintiff, but alleged that the amounts claimed by the plaintiff as payments were sums advanced by the defendant to the plaintiff to relieve his financial distress to become gifts when like amounts were advanced to plaintiff by other members of the plaintiff's family. By counterclaim it was alleged that equal amounts were not advanced by other members of the plaintiff's family by reason of which the advancements by defendant failed to become gifts, and the amounts so advanced by defendant, amounting to $1,644, were held by the plaintiff for the use and benefit of the defendant, for which the defendant prayed judgment against the plaintiff.

A trial by jury resulted in a verdict and judgment for the plaintiff for the sum of $6,203.58, from which the defendant has appealed.

The errors assigned by the appellant are that the trial court erroneously refused to give certain requested instructions to the jury and erroneously gave others, that the evi-

dence is insufficient to justify the verdict and judgment, and that the court erred in denying the defendant's motion for a new trial.

A brief statement of the facts as claimed by the opposing parties is necessary to illustrate the questions to be decided.

Plaintiff and defendant are father and son. The plaintiff is a farmer, now about seventy-seven years of age. He has resided for many years on a farm at Plain City in Weber county. The defendant is an attorney at law of more than thirty years' practice in the courts of this state, and for many years has resided in Salt Lake City. In the year 1919 the defendant was interested with certain associates in promoting a scheme for the reclamation and sale of certain lands in Cache county. The scheme involved the acquisition of a considerable area of land upon which water to be obtained from Bear river by means of a pumping plant was to be applied for irrigation and the land with water rights disposed of. A corporation called the Petersboro Land Company was organized for the purpose on December 31, 1919. Later the name of the corporation was changed to Intermountain Sugar Company. Most of the capital stock was issued to the defendant and his associates in exchange for land and water rights transferred by them to the corporation. The defendant was one of the promotors of the scheme, and was heavily interested in it. He prepared the articles of incorporation, and was present when they were executed.

The plaintiff contends that the defendant invited him to to subscribe for stock in the corporation, but that he declined because he had no money to invest and would not borrow for that purpose. The defendant, knowing that the plaintiff was able to borrow money, and desiring the influence and prestige of the plaintiff in the organization, proposed that the plaintiff borrow $5000, and put it in stock in the corporation, and that he (the defendant) would pay the money back to the plaintiff in ninety days; that with such understanding the plaintiff did borrow $5,000

at a bank in Ogden, and, at the direction of the defendant, signed the articles of incorporation of the corporation, and formally subscribed and paid $5,000 for fifty shares of its capital stock. The articles of incorporation showed a subscription for 160 shares of stock of the par value of $16,000 by the plaintiff. It was explained by the defendant himself that 100 shares of this subscription was for A. S. Heggie and 10 shares for W. W. Beck, neither of whom were present at the time. A certificate for 50 shares of stock was issued to the plaintiff. Thereafter, and upon the request of the defendant, he acted as a director of the corporation, and attended and participated in numerous meeting of the directors. He was also employed for a few months as foreman of a group of workmen employed by the company, for which he was paid $200 per month. Later the corporation failed. At various times the defendant made partial payments to the plaintiff upon the amount due him, the aggregate of which was $1,669. The defendant repeatedly promised to pay the remainder due, but did not do so.

The defendant denied that the plaintiff furnished any sum whatever for defendant's use or benefit, but claimed that plaintiff invested the sum in question on his own account in the stock of the corporation. He admitted making the payments as claimed by the plaintiff and certain promises to make future payments, but contended that they were all in the nature of gifts made voluntarily to relieve the financial distress of the plaintiff. The argument of the appellant respecting the supposed errors in the charge to the jury, in the main, goes to the sufficiency of the evidence to establish a cause of action in favor of the plaintiff. Exceptions were taken to the refusal of the trial court to direct a verdict against the plaintiff of no cause of action and to direct a verdict for the defendant on his counterclaim. The argument, as we understand it, is that, in view of the admitted fact that the plaintiff subscribed and paid for the capital stock and accepted a certi-

ficate therefor in his own name, and acted as a director of the corporation, he is thereby precluded by law from claiming that the money was paid out for the use and benefit of the defendant. With this we do not agree. No authority of law supporting the proposition is called to our attention, nor has any sufficient legal reason been pointed out why the parties could not enter into such an agreement as the plaintiff alleged and proved. That the plaintiff accepted and retained a certificate of stock in his own name, and accepted and exercised the office of director in the corporation, are important facts to be considered in determining what the actual transaction was, but the existence of such facts are not in law inconsistent with an agreement on the part of the defendant to repay the plaintiff the amount paid for the stock.

That the defendant induced the plaintiff to subscribe for the stock by promising to repay the amount to the plaintiff in ninety days, and that the stock was issued to the plaintiff for the purpose of qualifying him as a director at the request of and for the benefit of the defendant, was well proved, and the jury was justified in finding to that effect. And such a finding is sufficient in law and in fact to entitle the plaintiff to recover the sum claimed as money paid. 41 C. J. 12.

The only error assigned concerning the defendant's counterclaim is the refusal of the court to direct a verdict for the defendant for the sum of $1,270 on account of it. It is plain that this request was properly refused. There was no request by the defendant to submit the counterclaim to the jury and no exception taken or error assigned because it was not submitted. As all payments claimed to have been made by the defendant were expressly admitted by the plaintiff, there was no question on that score. It is apparent that at the trial the matter of the defendant's counterclaim was ignored and abandoned.

Complaint is made that the court erred in giving an instruction to the jury, No. 15, as follows:

"You are instructed that the only issues in this case are between plaintiff and defendant. Evidence on collateral or outside issues not connected with the issues in this case is inadmissible, except as embodied in conversations in which statements made by one or more persons on such subjects formed or are claimed to have formed a part of such conversations."

There is obviously some error in the record of this instruction, for the latter portion of it is unintelligible and meaningless. The first part of the instruction was evidently designed to exclude from consideration much extraneous matter brought into the case by the defendant, concerning family differences and disputes with third persons. We do not think it left the jury to judge of the competency of the evidence, as contended by appellant. We do not approve the instruction, but, in view of the issues and evidence, are unable to see how it could result in prejudice or harm to either party.

Other exceptions to parts of instructions are briefly alluded to by the appellant, but we find them without merit.

The appellant suggests in his brief that there is a variance between the allegation and proof of plaintiff's case. He says "the complaint alleges a case of money had and received or a loan," and that the evidence shows neither. There are several reasons why the judgment cannot now be impeached upon that ground. The allegation of the complaint is that "the defendant received the sum of $5,000.00 from the plaintiff to and for the use of the defendant, and which sum the defendant then and there agreed to pay to the plaintiff." This is not a count for for money had and received. The essential characteristic of that count is the receipt of money by the defendant for the use and benefit of the plaintiff. Where the money is paid for the use of the defendant, the proper count is for money paid, 41 C. J. 49, the traditional form of which is "that defendant is indebted to the plaintiff for money paid to defendant's use and benefit at his special instance and request, and that defendant promised and agreed to repay

the same," 41 C. J. 22. As before seen, the plaintiff's proof established a cause of action as for money paid by the plaintiff to a third person at the request of the defendant and for his use and benefit, and which the defendant promised and agreed to repay to the plaintiff. It was no material variance to prove payment to a third person instead of to the defendant as alleged. *Fenlason* v. *Pac. Fruit Package Co.*, 112 Or. 633, 230 P. 547. The allegation of the complaint varies from the classical form by averring "that the defendant received the sum of $5,000.00 from the plaintiff," instead of "that the plaintiff paid the sum of $5000.00 to the defendant." The variation is not material. The same substantial fact is expressed by both statements. The other element of a count for money paid is included in the complaint. We therefore think the pleading states a count for money paid and not for money had and received. But, if there is an ambiguity in this respect, it must be resolved in favor of the theory adopted at the trial by the parties and the court. *Horka* v. *Wieczorek,* 64 Ind. App. 387, 115 N. E. 949. And it was upon the theory of a count for money paid that the case was tried and decided below. No objection whatever was made there that the proof did not conform to the plaintiff's complaint. Neither is there an assignment of error in this court relating to the subject. Another reason why the claim of variance must be dismissed is Comp. Laws Utah 1917, § 6615, which provides that no variance between pleadings and proof is to be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Here it is not even claimed that the defendant was misled. That he was not is affirmed by the record that plaintiff's counsel made his opening statement in which he fully outlined the facts intended to be proved, that the plaintiff's evidence was offered and admitted without any objection whatever that it did not conform to the pleadings, and that the defendant promptly followed with his evidence in support of his defense upon the merits, and the case went

to the jury, with no objection whatever by the defendant that there was a variance between the plaintiff's pleadings and his proof.

The principal argument of appellant is devoted to the assigned error of the trial court in denying his motion for a new trial for misconduct of the jury.

Defendant attempted to show by affidavits that one A. J. Nielson had improperly influenced the jurors by mingling with them during the trial and making derogatory remarks concerning the character of the defendant. Nielson was not connected with the case, but attended the trial a portion of the time as a spectator. He was seen around the courtroom, and at times during recesses of the court was observed in conversation with jurors. On one occasion during a recess of the court he remarked concerning the defendant, "There is a dirty crook." One of the jurors overheard the remark; the juror's affidavit being that he overheard Nielson say to some stranger with whom he (Nielson) was talking that "Skeen (without designating which Skeen) was crooked"; that he (the juror) paid no attention to the remark whatever, and was not influenced by it, and never thought of it or mentioned it thereafter to any person or juror. There were other affidavits showing that Nielson had a personal animosity and was hostile and unfriendly towards defendant, and that he had, during the trial, made a statement reflecting upon defendant's integrity to one other spectator not connected with the case. An affidavit that the juror had after the trial made statements to the effect that he had been told by Nielson during the trial that defendant was a crook and had robbed his own father, etc., and that Nielson was a reliable fellow, was denied by the affidavit of the juror.

The substance of the showing was that Nielson, a person not connected with the case, in the hall of the courthouse, and during a recess of the court, made the derogatory remark; that one juror overheard it, but paid no attention to it, and was not influenced by it. There was no showing

that the plaintiff or any one for him participated in or was connected with the occurrence. Neither was it made to appear that Nielson made the remark with any knowledge or intent that it should be heard by the juror.

We do not think, upon this showing, the trial court was bound to find misconduct on the part of the juror and to grant a new trial on account of it. The granting of a new trial upon this ground is within the sound discretion of the trial court, and it is generally held that a new trial will not be granted because of remarks about the case in the hearing of jurors by strangers to the litigation where neither the successful party nor the jurors were at fault, unless such remarks probably influenced the verdict. 46 C. J. 138; *Cowles* v. *Merchants*, 140 Mass. 377, 5 N. E. 288; *Caswell* v. *Pitcher* (Me.) 10 A. 453; *Ridenour* v. *City of Clarinda*, 65 Iowa, 465, 21 N. W. 779; *Van Loon* v. *St. J. Ry. L., H. & P. Co.*, 271 Mo. 209, 195 S. W. 737; *Stevens* v. *Depue*, 151 Wash. 641, 276 P. 882.

JUDGMENT AFFIRMED.

ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.

STRAUP, J. (dissenting).

The plaintiff by his complaint alleged "that defendant received the sum of $5,000.00 from the plaintiff to and for the use of the defendant which said sum the defendant then and there agreed to pay to the plaintiff" within ninety days thereafter, with interest, and that no part had been paid except the sum of $1,669. There were no other charging allegations in the complaint. The plaintiff thus prayed judgment for the difference, together with interest, amounting to $6,370. The defendant denied the allegations of the complaint, and alleged that the payments made by him were not upon or for any moneys or other thing of value received by him from the plaintiff, or upon any obligation owing by him to the plaintiff, but that such payments were made

as advances to the plaintiff at his special instance and request, which, on a counterclaim, the defendant sought to recover back. A reply was filed to the counterclaim. The case was tried to a jury, who rendered a verdict in favor of the plaintiff for the full amount demanded by him. The defendant appeals.

The assignments challenge the rulings refusing to direct a verdict against the plaintiff and in favor of the defendant on the issues presented by the complaint; refusing to charge, as requested by the defendant, and in charging the jury as was done in portions of the charge; and denying the defendant's motion for a new trial on grounds of alleged errors committed on the trial, misconduct of the jury, and irregularities in proceedings of the plaintiff and of the jury whereby the defendant was not given a fair trial.

The plaintiff and the defendant are father and son. The plaintiff was a business man residing in or near Ogden, Utah; the defendant an attorney at law residing in Salt Lake City. In the latter part of December, 1919, or the early part of January, 1920, a corporation was organized in the name of the Petersboro Land Company to engage in the business of acquiring lands and water rights, building and owning canals, reservoirs, pipe lines, pumping plants, etc., acquiring, selling, and dealing in livestock, and purchasing, erecting, operating, and selling sugar factories. Its principal place of business was in Cache county, where its operations were to be carried on. The incorporators consisted of six persons, Moses and Edward Dahle, Louis and Joseph Cardon, Moroni Beck, and the plaintiff, Lyman Skeen. The capital stock of the company consisted of 2,500 shares of the par value of $100 each, of which the incorporators each subscribed $10,000, except the plaintiff, who subscribed $16,000. The defendant, J. D. Skeen, and his brother D. A. Skeen, as partners, owned certain water and water rights in and under a pumping plant and canals being constructed by them, which, after the corporation was

created, they, by a contract entered into with and in the name of the corporation, agreed to sell and transfer to the corporation upon a money consideration to be paid by the company from sales made by it of its capital stock. Neither J. D. nor D. A. Skeen was an incorporator or a stockholder, or an officer, of the company. The Cardons and Dahles deeded a large acreage of lands to the corporation for capital stock at its par value. In February or March, 1920, the name of the corporation was changed to that of the "Intermountain Sugar Company," and an increase made in the number of shares to 15,000 shares of the par value of $100 each, which were divided into two classes, class A and class B, treating all stock theretofore issued up to that time as class A and to be exchanged share for share in the name of the Intermountain Sugar Company. The contract entered into between the corporation, the Petersboro Land Company, and J. D. Skeen and D. A. Skeen, was modified whereby they were given 1,000 shares in the name of the Intermountain Sugar Company at the par value of $100 each. The shares of stock of the Dahles and the Cardons, as well as of all others, including the plaintiff, holding shares of stock in the name of the Petersboro Land Company, were surrendered up and cancelled and shares of stock issued in lieu thereof in the name of the Intermountain Sugar Company.

When the corporation was organized in the name of the Petersboro Land Company, the plaintiff purchased 50 shares at the par value of $100 each, paying therefor $5,000. He paid that by check payable "to the order of the Petersboro Land Company," which was delivered to, and indorsed by, the secretary and treasurer of the company and 50 shares of stock of the company issued in his name and delivered to the plaintiff. When the name of the corporation was changed, the plaintiff surrendered such shares of stock to the company, who issued in his name and delivered to him 50 shares of stock of the Intermountain Sugar Company. At about that time he was made a director of the

company under its changed name. He also was made foreman or manager of the agricultural and livestock interests of the company at a salary of $200 per month, and for some time thereafter acted as such foreman or manager and received the stipulated compensation therefor. He, as a director, attended board meetings of the directors and participated therein. He was a man of considerable business experience; was county commissioner of Weber county for two terms; had been engaged in railroading; employed by a smelting company to appraise crops; and had been engaged in irrigation and other enterprises. When he acquired the stock and signed the articles of incorporation, he was about 69 years of age.

With respect to the transaction, the plaintiff in substance testified that the defendant had asked him to take stock in the company. He testified he was familiar with the enterprise and with the lands and water rights; that he had been over the ground several times, and thought it was a good thing, and that the project would be successful, but that he did not have the money with which to purchase the stock without borrowing money, and did not desire to do that; that the defendant told him he wanted the plaintiff to get interested in the enterprise or project; that he wanted his influence; that everyone knew him in the county, and that he wanted his influence to sell lands under his water claims; that he and the defendant together went over the lands and the project, and that the defendant asked him to take enough stock to become a director in the company. The plaintiff further testified that he wanted to help the defendant, but that he would not put any money into the project; that the defendant asked him if he could borrow the money; that the plaintiff told him he could; and that the defendant then stated to the plaintiff, "If you will get the money I will pay you in ninety days." The plaintiff and another son also went up and looked the project over, but when they returned the plaintiff stated he would not borrow money to purchase any of the stock of the proposed company.

He further testified that later he and the defendant went to Logan, where the articles of incorporation were signed and entered into, the defendant urging that the plaintiff buy some stock, and stated that "I can get you the money"; that the plaintiff thereupon attended the meeting, signed the articles of incorporation as an incorporator, and subscribed for $16,000 of stock, gave and delivered his check to the secretary and treasurer of the company for $5,000, payable to the order of the Petersboro Land Company. The secretary and treasurer at the same time, or a few days thereafter, issued and delivered to the plaintiff in his name 50 shares of stock of the company, and, when the name of the company was changed, the plaintiff, with others, surrendered his stock, and had an equal number of shares issued to him in his name of the Intermountain Sugar Company, which, at all times thereafter, and up to and including the time of the trial, were held and possessed by him. The plaintiff, however, testified that the shares of stock did not belong to him; that they belonged to the defendant; that he held them in trust for him, but the plaintiff at no time tendered, or offered to tender, the shares of stock, or any part thereof, to the defendant. The plaintiff further testified that, after he delivered the check to the secretary and treasurer of the company, he returned to Ogden and at a bank borrowed $5,000, giving his unsecured note in payment therefor; that, when the note matured, he called the defendant's attention to it, asked him to pay it, but that the defendant, instead of paying it, asked the plaintiff to get a renewal of the note, which he did at several times. He further testified that, on demand made, the defendant at different times and in the aggregate paid the plaintiff $1,669, but refused to pay anything more. Testimony also was given by others to the effect that the defendant had stated to them that he was indebted to or owed the plaintiff in the sum of $5,000.

The defendant by his testimony denied all such admissions; denied that the $5,000, or any part thereof, was

borrowed by the plaintiff for the defendant, or for his use or benefit; denied that he was indebted to the plaintiff in any amount, or that he received the sum of $5,000, or any amount, from the plaintiff, or that such or any sum was paid for his use or benefit, or that he had the use or benefit of any part thereof; and denied that the stock was purchased by the plaintiff for the defendant or for his use or benefit or that the plaintiff at any time prior to the commencement of the action claimed that the defendant was indebted to him in any sum whatever, or that the payments made by him were for purposes as testified to by the plaintiff. The defendant further testified that at the request of the plaintiff, and for his use and benefit, he paid several interest payments on a note held by the bank against the the plaintiff, not in the sum of $5,000 but in the sum of $9,300 (but which the plaintiff testified was made up by his prior $5,000 note and other obligations owing by him to the bank), and that he at another time advanced to the plaintiff the sum of $1,000 to reduce the plaintiff's indebtedness at the bank, and offered, as far as his means permitted, to make additional advances to reduce his father's obligations at the bank, providing the defendant's brothers and other members of the family, who the defendant claimed were financially as able as he was, would also make contributions equal to those made or to be made by the defendant. As to that, the plaintiff testified he did not ask and did not want them to do so, as they did not owe him anything, but that the defendant did. The defendant thus, upon the theory and upon the conditions claimed by him the payments were made by him to his father, counterclaimed and sought judgment against the plaintiff in the sum of $1,664, the amount which the defendant claimed he had advanced to his father for the purposes indicated. ·

The ruling denying the defendant's motion to direct a verdict in his favor on the issues presented by the complaint was excepted to, is assigned as error, and is discussed. I think the court erred in the ruling. The only allegations

in the complaint to characterize the action are as heretofore indicated, that "the defendant received the sum of $5,000.00 from the plaintiff to and for the use of the defendant," which the defendant agreed to pay to the plaintiff within ninety days, but paid only the sum of $1,669, and failed and refused to pay more. The case thus declared is that of a common count for money had and received. Such a complaint is so denominated by the authorities and adjudicated cases generally. It is so expressly and not otherwise characterized and treated in his brief by counsel for the plaintiff and also by the defendant. Such an action is a remedy existing in favor of one and against another when such other received money or its equivalent under circumstances which in equity and good conscience he ought not to retain and which belongs to the plaintiff. 17 Cal. Jur. 602. To maintain an action for money had and received it is necessary, not only to aver, but to prove, that the money or its equivalent sued for was had or received by the defendant, and is still held and retained by him for the use and benefit of the plaintiff, or that the defendant holds and retains money or its equivalent which belongs to the plaintiff, and which in equity and in good conscience the defendant ought to pay him. 4 Bancroft, Code Pleading, § 1911. Under such an action no recovery can be had against the defendant who did not receive any part of the money or its equivalent sued for, nor holds or retains money belonging to the plaintiff. 17 Cal. Jur. 606, 607. The general rule and the weight of authority is that the plaintiff, to recover, must show that the defendant actually received money or its equivalent belonging to the plaintiff, or prove such facts as to raise a fair presumption that he received it or that he had money in his possession belonging to the plaintiff which he ought not retain. 41 C. J. 43; 2 R. C. L. 782; *Alexander* v. *Coyne*, 143 Ga. 696, 85 S. E. 831, L. R. A. 1916D, 1039. In the case of *Boroughs* v. *Peterson*, 39 Utah 11, 114 P. 758, it is held that "to sustain an action for money had and received, a plaintiff must show

that there has been an actual receipt of the money or something equivalent to it by the defendant, and the evidence must tend to show a definite sum or sufficient facts from which by calculation a jury may ascertain the sum."

. In some jurisdictions it is held that it is sufficient if the defendant received the use and benefit of the money. 41 C. J., supra. Though it be assumed that the action lies, not only when the defendant has actually received the money or its equivalent, but also where he received the use and benefit of it, how stands the case? Admittedly, the defendant did not receive the money paid by the plaintiff nor the check evidencing the money paid by him. To the contrary, the check was made payable to the order of the Petersboro Land Company, and was delivered, not to the defendant, but to the secretary and treasurer of the company. True, the plaintiff testified that, while he gave the check for 50 shares of stock of the company, he nevertheless bought the stock on the defendant's promise that he would repay the plaintiff the amount paid by him for the stock. But the stock was not delivered to the defendant. He at no time had it or received it, or exercised any control whatever over it. The plaintiff still has and retains it. The defendant thus did not receive any part of the money paid by the plaintiff nor any stock issued and delivered to the plaintiff. To the contrary, the evidence clearly and indisputably shows that the plaintiff paid the money to the corporation of which the defendant was not even a stockholder, and in consideration thereof the company issued to the plaintiff and in his name 50 shares of its capital stock upon his subscription of stock of $16,000. Nor did the defendant have or receive the use or benefit of the money so paid by the plaintiff to the corporation, or of the stock issued to him in consideration thereof. So far as made to appear, the money so paid was not only directly paid to, and received by, the corporation, but also was used and expended by it for corporate purposes and for its use and

benefit, and in no sense was paid by the corporation to the defendant or applied by it to or for his use or benefit.

It is well recognized that the remedy or common count for money had and received cannot be resorted to in all cases of assumpsit, or of all undertakings either express or implied to perform oral agreements or for nonperformance of contracts written or oral, and that there are many instances where a declaration of common count for money had and received is insufficient, and where the pleader is required to declare specially. 17 Cal. Jur. 650; *Barrere* v. *Somps,* 113 Cal. 97, 45 P. 177, 572. It also is familiar doctrine that a plaintiff cannot recover upon a different cause of action from that which he has alleged. The object and design of a pleading is to inform the adverse party of the real cause of action or defense relied upon by the pleader so that his adversary may have an opportunity to meet it at the trial, and that the plaintiff must recover according to the allegations of his complaint, and, if the proof establishes a different cause from that which he has alleged, although a good one, he cannot recover. *Soden* v. *Murphy,* 42 Colo. 352, 94 P. 353; *Dobbs* v. *Campbell,* 66 Kan. 805, 72 P. 273.

We in effect held that many times. We recently held (*Christensen* v *Nielson* [Utah] 276 P. 645, 648), that a plaintiff may not maintain a theory or take a position "beyond the theory stated in the complaint nor beyond the allegations therein contained. He there prescribed his case and is bound by his cast." We also recently held (*Evans* v. *Shand* [Utah] 280 P. 239, 240), as we have many times before, that "whatever liberality may be accorded procedure, there nevertheless are certain fundamental principles which cannot be disregraded. These, among others, are that pleadings are the juridical means to invest the court with subject-matter jurisdiction and to limit issues and to narrow proofs; that courts cannot make a complaint for one thing stand for a different thing; that recovery must be secundum allegata et probata, which is but a neces-

sary deduction from the maxim that what is not juridically presented cannot be judicially decided; that the statement of the cause of action or ground of defense as laid binds the court as well as the parties; and that there must be no departure is but another statement of the maxim that it is vain to prove what is not alleged. These principles are primary."

What Chief Justice Marshall said in *Crocket* v. *Lee*, 7 Wheat. 522, 5 L. Ed. 513, is just as true to-day as when declared by him, that hardships of a particular case do not justify prostrating fundamental rules established for ages on the soundest and clearest principles of general utility; that, if pleadings in the cause were to give no notice to the parties or to the court of the material facts on which the right asserted was to depend, no notice of the points to which the testimony was to be directed and to which it was to be limited, and, if a new cause might be made out in proof differing from that stated in the pleadings, all will perceive the confusion and uncertainty which would attend legal proceedings and the injustice which must frequently take place. So, too, what was said by Mr. Justice Swayne in Washington, *A. & G. R. Co.* v. *Bradleys*, 10 Wall. 299, 303, 19 L. Ed. 894, that "allegations and proofs must agree," and "that averments without proofs and proofs without averments are alike unavailing," and that the judgment must conform to the scope and object of the pleadings. Such doctrine is founded on the axioms that jurisdiction is limited by the pleadings, and that it is vain to prove what is not alleged. To me, it is apparent that the evidence adduced does not support the allegations of the complaint. Just as clear is it that the plaintiff alleged one cause of action, a cause for money had and received, and, instead of adducing evidence tending to support such a cause, adduced evidence respecting an entirely different cause, one, as he testified to, involving an oral and express agreement between him and the defendant to the effect that the plaintiff was to purchase 50 shares of the capital stock of the Peters-

boro Land Company at the par value of $100, or for $5,000, and that the defendant was to reimburse him therefor (an agreement wholly without consideration, unless the defendant received the use or benefit of the money paid or of the stock, which he did not), and that, in pursuance thereof, the plaintiff on his own unsecured note borrowed $5,000 at a bank which was paid by him to the corporation and for its use and benefit for the purchase of such shares; and, as also shown without dispute, instead of purchasing 50 shares, the plaintiff, when he signed the articles of incorporation as one of the original incorporators subscribed not only for 50 shares but for 160 shares or for $16,000.00 worth of stock of the company, and did that after he had several times been over the lands and water rights to be acquired by the company and had become satisfied, as he testified, that the enterprise was a good one and would be successful, and thereafter became a director of the company and its foreman at a salary of $200.00 per month and at all times held, retained and voted the shares of stock so issued to him in his own name and as his own stock, but which, he testified, as mere conclusions, he did not own but were held by him in trust for the defendant.

Such a transaction, as it seems to me, is not one of money had and received and is not one coming within the rule as stated by this court in *Boroughs* v. *Peterson,* supra, that "the plaintiff must show that there has been an actual receipt of the money or something equivalent to it by the defendant," or that the defendant received the use or benefit of money or its equivalent paid to another for his use or benefit, or that he became possessed of money or its equivalent belonging to the plaintiff, nor may it be said that such a transaction as testified to by the plaintiff is within the general scope and meaning of the complaint.

Attention is called to the statute, Comp. Laws Utah 1917, § 6615, relating to a variance. But the matter in hand is not a mere variance. It is a failure of proof, a failure to prove the material allegations of the complaint, a failure

to prove that the alleged money or any part thereof, or its equivalent, was received by the defendant or paid to another for his use and benefit, or that he in any particular had the use or benefit of it, and hence the matter is controlled by Comp. Laws Utah 1917, § 6617, which provides:

"Where, however, the allegation of the claim or defense to which the proof is directed is unproved, not in some particular or particulars only, but in its general scope and meaning, it is not to be deemed a case of variance within the last two sections [6615 and 6616], but a failure of proof."

Observations also are made that the evidence given by the plaintiff was received without objections or exceptions and no assignment of error made with respect thereto. By questions propounded to the plaintiff, he was asked to relate the transaction had between him and the defendant, the conversation had between them, the matters and things done by them, the circumstances under which and to whom the plaintiff paid the money and received the stock, and was cross-examined with respect thereto. The inquiries were proper enough, but, until the testimony was adduced, it could not be told whether it did or did not support the allegations of the complaint. At the conclusion of the evidence, the defendant interposed the motion for a directed verdict on the issues presented by the complaint. The overruling of that motion or request unquestionably is before us for review. If the evidence as adduced, and when considered in the light most favorable to the plaintiff, and he, for the purposes of the motion or request, is given the benefit of it, nevertheless is insufficient to support the material allegations of the complaint—does not support them—it is of no significance that the evidence was received without objections. With reference to a statute similar to our statute, it in 21 Cal. Jur. 267, is said:

"Where the allegation of a claim or defense to which the proof is directed is unproved, not in some particular or particulars only but in its general scope and meaning, there is not a case of variance, but a failure of proof. So, if the case as proved and found is essentially

different from that presented by the pleadings, there is a failure of proof and the defendant is entitled to a nonsuit or to the reversal of judgment against him, even though the objection might have been obviated by amendment. In an action upon a note alleged to have been executed to a firm, proof that it was executed to and is due to one of the partners constitutes a failure of proof. Likewise, where the complaint alleges an agreement to pay a designated sum of money for services and the evidence discloses that the contract was that plaintiff should accept a certain number of shares of stock in full compensation for such services, there is a failure of proof."

Though it be regarded that in some particulars there was a mere variance between the allegations of the complaint and of the proof, or the case tried on a theory different from that declared in the complaint, yet no effort was made by the plaintiff to amend his complaint to conform to the evidence. He stood on his complaint as cast by him. A material variance is ground for nonsuit, even though the evidence was admitted without objection, unless the pleader obtains leave of court to amend his pleadings so as to make it conform to the proof. 21 Cal. Jur. 263. As has been seen, the motion or request of the defendant to direct the verdict on the issues presented by the complaint necessarily involved the question of sufficiency of the evidence to support the allegations of the complaint and the material facts as therein alleged. If the evidence did not sufficiently support such allegations, as I think it does not, the defendant was entitled to prevail on his motion, though the plaintiff may have adduced sufficient proof to show a prima facie case in his favor on a theory different from that stated in his complaint, *in the absence of any offer to amend the complaint to conform to the evidence.* If the complaint was not amendable without offending the general rule that amendments may not be made which change the cause of action to a different or new cause, and if the cause as declared is not supported by sufficient evidence, the defendant again was entitled to a directed verdict, though the evidence adduced by plaintiff may prima facie show a different or new cause.

The court, in submitting the case to the jury, stated to

them the issues presented by the complaint and by the counterclaim and in the language as in the pleadings stated. The court further instructed the jury that the burden was upon the plaintiff to prove by a preponderance of the evidence the allegations of the complaint, and that "before the defendant can recover on his counterclaim he must prove by a preponderance of evidence the allegations of his counterclaim." The counterclaim thus was not treated as having been abandoned, but was submitted to the jury for its determination. The court by numerous paragraphs of the charge charged the jury with respect to plaintiff's cause and as to divers hypotheses on which the jury were directed to return a verdict in favor of the plaintiff. But the court did not charge the jury as to any of the matters stated in the counterclaim, except stating the allegations therein contained and that the burden of proof was on the defendant to establish them. In all other particulars, as to the issues presented by the counterclaim, the jury, unguided, and without let or hindrance, were left to dispose of such issues as they thought meet and proper. The defendant proposed several requests respecting the matters contained in the counterclaim. They were refused or materially modified. One was for a directed verdict on the counterclaim for $1,270 claimed to have been paid by the defendant to the plaintiff in no way relating, as he claimed, to plaintiff's cause. Though the plaintiff failed to prove his cause, and though such payments in no particular related thereto, yet upon certain views of the evidence an inference may be deduced that such payments were gifts to and voluntary payments in aid of the plaintiff. In such view I think the request was properly refused. Five or six lines of another request of the defendant were given and thirteen or fourteen lines thereof stricken and refused, and the request then indorsed by the court "given as modified." I think the defendant was entitled to the substance of the request.

In charging as to plaintiff's cause the court in several particulars charged that if the plaintiff "paid to any person

the amount he claims to have been paid," and if the plaintiff "paid to Petersboro Land Company $5,000.00," at the request of the defendant and for his use and benefit, and that the defendant "promised to repay plaintiff said sum," the verdict should be for the plaintiff. I think there were neither pleadings nor evidence to support such a charge. The moneys were paid by the plaintiff to the company for 50 shares of its capital stock issued to the plaintiff. The corporation and not the defendant received the money. It was paid to the use of the company and in consideration of stock subscribed for by the plaintiff and the money used by the corporation in its corporate business and for its use and benefit. The defendant neither directly nor indirectly received or used a dollar of it. He was not an incorporator, nor an officer, nor then even a stockholder of the company. The moneys were not paid with the intention or expectation that the defendant was either directly or indirectly to receive or use any part of it. It was not paid to discharge any debt or obligation which he owed the company. The only way the defendant was interested in the corporation was that he and his brother had contracted to sell certain water rights to the company which were to be paid for by it from sales of its treasury stock. Some time later, and when the company was reorganized, the defendant and his brother took stock in the reorganization for their water rights. If the plaintiff purchased the 50 shares of stock (he having subscribed for 160 shares) at the request of the defendant, and held the stock in trust for his use and benefit and on the defendant's promise to repay the plaintiff the purchase price, such was not a money had and received proposition, nor was such the theory on which the case, by the charge referred to, was submitted to the jury. And to recover on such theory the plaintiff was required to declare specially for a nonperformance of the express oral agreement, and not on a mere common count for money had and received. In the next place, such charge ignored the issues presented by the counterclaim, notwithstanding

they were submitted to the jury and directed a verdict for the plaintiff, regardless of such issues.

· The court further charged:

"You are further instructed, gentlemen of the jury, that even though you believe from the evidence that as a result of the payment of $5,000.00 by the plaintiff to Petersboro Land Company on or about January 8, 1920, stock in said company was issued to plaintiff and he thereafter became a director in said company and acted as such director, nevertheless, if you further find from the evidence that said payment was made at the request of the defendant and for his use and benefit, and upon his promise to repay plaintiff the money so advanced, and that plaintiff was acting as the agent or representative of defendant as such stockholder and director, then your verdict should be in favor of the plaintiff and against the defendant."

That $5,000 was paid by plaintiff for stock in the company, that the stock was issued direct to and retained by him, that he became a director in the company and acted as such, together with other similar acts and conduct, were urged and relied on by the defendant as tending to disprove, or as bearing on, the claim of the plaintiff that he made the payment at the request of the-defendant or for his use and benefit, but which the court by this charge rendered insignificant and of no controlling importance. Such facts so singled out, to which special attention was directed, had a direct bearing on the question of whether the payment was or was not made at the request of the defendant or for his use and benefit, and were required to be considered in connection with all other evidence bearing on and in determining such question. Added to that was the further suggestion to the jury that such facts also in effect would be rendered immaterial by a finding that the plaintiff was acting as the agent or representative of the defendant "as such stockholder and director," thereby introducing an element or theory of agency at war with the complaint, unsupported by the evidence, inconsistent with other portions of the charge, and unlawful in its purpose. Such charge was given at the request of the plaintiff and in the language

as requested by him. The evident purpose of the request was to minimize what may have been thought to be cogent and undisputed facts inconsistent with plaintiff's cause. I think the charge invaded the province of the jury, and was erroneous and prejudicial.

Paragraph 15 of the charge referred to in the prevailing opinion manifestly is erroneous. The record shows that it, too, was given at the request of the plaintiff and in the exact language as requested by him. Both the request and the charge are in the record. The record shows it was specifically excepted to by the defendant in the presence of the plaintiff and the court. Notwithstanding the exception taken, no effort was made either by the court or the plaintiff to modify it. There is not anything to indicate it was not intended to be given just as it is and as it in fact was given to the jury. Since it is unintelligible and meaningless to us, as held in the prevailing opinion, in what better sense was it understood by the jury? A sensible instruction is presumed to have been understood and applied in accordance with its expressed and intended meaning. But what in such particular may be said of a senseless, of an unintelligible and meaningless, instruction. The jury in effect were told to give meaning to it and to consider it in connection with the whole charge. What meaning they gave it no one but themselves knew, and they are not permitted to tell. The general rule is that a vague, obscure, or ambiguous instruction, calculated to do harm, constitutes reversible error. Blashfield, § 72. It cannot be said that the more unintelligible, or ambiguous, or obscure, or confusing an instruction may be, the less harmful it is. By the charge the trial court said: "Evidence of collateral or outside issues not connected with the issues in this case is inadmissbile, except as embodied in conversation," etc., thereby implying that such evidence is not to be considered except as so embodied. By such language the jury themselves, unaided and unguided, were left to determine what

were "collateral or outside issues," and what were "issues in" the case. Who knows what kind of a stagger they made at it. Certainly they, if they gave any attention to the charge, as they were required to do, were left to determine what evidence in such respect was admissible and what inadmissible, and so we cannot tell what evidence they considered or did not consider. We have lying before us all the evidence received in the cause. But the jury may have found most of it, especially that given on behalf of the defendant, as relating only to "collateral or outside issues not connected with the issues in" the case, and, finding it not "embodied in conversation," etc., may have rejected it. Again, the jury may have considered all documentary evidence, of which there was much, including the articles of incorporation signed by the plaintiff, the certificate of stock issued to and held by him, his oath of office, minutes of the board of directors showing his activities in the affairs of the company, as collateral issues and not "embodied in conversations," and thus regarded such evidence inadmissible and of no importance. It, of course, is readily conceded that the competency and admissibility of evidence are questions for the court. The instruction complained of in effect left such questions to the jury. It frequently has been held reversible error to give instructions which require the jury to determine such questions or any other legal proposition. The defense made by the respondent to the instruction is, not that anything inadvertently was omitted from it or that it otherwise was not intended just as it was given, but that the instruction "seems perfectly clear," and, "after deep thought and careful consideration" of it, "we confess that it is impossible for us to see any possibility" of the interpretation put on it that it was ambiguous or unintelligible or that it left to the jury the determination of the admissibility of evidence, which is about as cloudy as the instruction itself. The instruction is in line with another portion of the charge that "the fact of making the loan must be established by competent proof," thereby im-

pliedly leaving to the jury what is "competent proof." I think the instruction erroneous and prejudicial.

The defendant moved for a new trial on the ground of misconduct. The motion was supported and opposed by affidavits. As shown by them, these facts are undisputed. The defendant and his brother, also an attorney, and who at the trial was actively engaged as one of the attorneys for the plaintiff, were on unfriendly terms. A Mr. Neilson was a confessed enemy of the defendant, and, as Neilson himself deposed, claimed that the defendant had defrauded and cheated him out of $10,000. Neilson was also acquainted with and was friendly to the plaintiff. Neilson was not a party to the suit nor a witness in the cause, nor had he any financial interest in the lawsuit. He, however, attended the trial for the greater part of two days. He deposed he attended the trial "merely killing time and gratifying curiosity." When the trial was going on, Neilson sat at or near the table with the plaintiff and his counsel, and the three were constantly together, except when the court was at recess. At an intermission or recess, Neilson in the courtroom introduced himself to another not interested in the lawsuit, and stated to him that the defendant was dishonest, that he had robbed him of $10,000, that he was crooked, and would give false testimony. Later the plaintiff introduced Neilson to the same person, whereupon Neilson, in the presence of the plaintiff, repeated the same disparaging statements. At intermissions and recesses of the court Neilson was seen talking with some of the jurors. He was acquainted with at least one of them, a Mr. Green. At one of such intermissions, as the defendant was leaving the courtroom, and six or ten feet from Neilson, who was talking to another, Neilson, within the hearing of juror Green, and referring to the defendant, stated, "There is a dirty crook." That the remark referred to the defendant is clear. Neilson himself, deposing on behalf of the plaintiff, deposed that he made the remark, and intended it "for the ears of said J. D. Skeen and without observing whether or

not any jurors were in the immediate vicinity." Juror Green, also deposing on behalf of the plaintiff, deposed that he heard "Neilson's remark that Skeen was crooked."

Such facts are not disputed. Juror Green further deposed that he paid no attention to the remark, was not influenced thereby, and that no mention was made of it by any other juror. A further affidavit was produced on behalf of the defendant that the affiant, several days after the verdict was rendered, called on juror Green at his office concerning a business transaction, and, on Green being asked if the defendant, J. D. Skeen, was interested in the transaction, he replied that J. D. Skeen's brother was interested, but that J. D. Skeen, was not, and that J. D. Skeen was "a crooked s— of a b— and would rob his own mother." When asked what made him think that, Green replied, "Why, Neilson said during the trial that Skeen was a crook, and would rob his own mother and had robbed his own father and that he would not trust him anywhere or any time," and that Neilson in the courtroom, while the Skeen case was on, told him that several times.

Green admitted the interview concerning a business transaction, but denied making the statements either in substance or effect attributed to him concerning the defendant, except that he told affiant that on an afternoon during the trial he heard Neilson, while talking to another, say that Skeen, "without referring to initials or name or any particular Skeen," was crooked.

I readily concede that on conflicting evidence respecting matters such as alleged the granting or refusing a motion for a new trial rests largely in the sound discretion of the trial court. The motion here was heard on affidavits. In such case we are in about the same position as the trial court in passing on the merits of the motion. Viewing the matter only on the undisputed facts, I am persuaded the verdict was tainted. That Neilson, an enemy of the defendant and friendly to the plaintiff, was about the courtroom creating an atmosphere against the defendant, as I think

clear. Though the plaintiff may not actively have aided him therein, yet he had knowledge thereof, and was willing to take advantage of whatever influence may have been created thereby in his favor. The matter is well put in the case of *York* v. *Wyman*, 115 Me. 353, 98 A. 1024, L. R. A. 1917B, 246, where the court said:

"More than once, and in no uncertain language, we have placed the the seal of condemnation, not alone upon the attempts of parties by word or deed to influence or prejudice jurors outside the court room, but also upon the indiscretion of their friends along the same line. And we have not stopped to inquire whether the attempt was successful, nor whether the mind of a juror was actually influenced, but only whether or not the mind of a juror might have been influenced by the attempt, or whether the attempt might have any tendency to influence the mind of a juror."

Such view is also supported by 1 Hyatt on Trials, § 929; 1 Spelling, New Trial and Appellate Practice, § 166, and by numerous cases from different jurisdictions.

That the juror deposed the remark heard by him did not influence him, and did not affect the unanimous verdict rendered by the jury in favor of the plaintiff, is not controlling. In the case of *Welch* v. *Taverner*, 78 Iowa 207, 42 N. W. 650, the court, among other things, said:

"Jurors must be kept free from all possible influences. When exposed thereto it will not do to inquire into the probability as to the extent of these influences and their effect upon the verdict. There is no safety except in setting aside the verdict in a case where acts and conversations are shown which could have influenced the jury."

The same thought is expressed in the case of *Bradbury* v. *Cony*, 62 Me. 223, 16 Am. Rep. 449, where it is said that:

"It was not necessary to show that the verdict was influenced by the improper conduct of the defendant's son [third party]. * * * Whenever a given course of conduct by the party litigant would induce a court to set aside a verdict, the like action on the part of his friends * * * would be equally efficacious in producing the same result, for their interference would be more likely to influence the minds of the jury than the more obvious and apparent interest of the party."

To the same effect is also the case of *McDaniel* v. *McDaniel*, 40 Vt. 364, 94 Am. Dec. 408. Many other cases could be cited supporting the same view.

The case here is one where father and son and brother and brother were arrayed against each other with considerable bad feeling, and where in such case disparaging remarks against a litigant has the tendency to do harm when otherwise they might not be harmful. I think the court erred in overruling the motion, and also committed prejudicial error against the defendant in respect of the other considered errors occurring in the trial.

I therefore am of the opinion that the judgment should be reversed and the case remanded for a new trial.