## APOSTOLOS v. CHELEMES.

No. 5015.   Decided April 17, 1931.   (298 P. 399.)

*E. A. Rogers and Vere L. McCarthy,* both of Salt Lake City, for appellant.

*Joseph Chez,* of Ogden, for respondent.

ELIAS HANSEN, J.

This action is founded on a complaint, wherein it is alleged:

"That on the 18th day of August, 1928, on plaintiff's premises in Davis County, Utah, the defendant violently and maliciously assaulted and beat the plaintiff and struck him upon the head a violent and malicious blow with a shovel having a sharp edge, whereby defendant put plaintiff in fear for his life, knocking him down into an irrigation ditch flowing with water, whereby the plaintiff sustained severe cuts on his head and other parts of his body, causing him excruciating pain and making it necessary for him the plaintiff, to be taken to a hospital and confined in bed for many days, and disabled him from attending to his work on his farm, plaintiff thereby incurring medical and surgical expense and hospital expense in the amount of Three Hundred Fifty ($350.00) Dollars, and the plaintiff has, ever since, and for a long time will be ill, and his hearing in one ear is completely destroyed and he has been permanently injured by defendant to his damage in the sum of Ten Thousand ($10,000.00) Dollars as compensatory damages, and the sum of Five Thousand ($5,000.00) Dollars as exemplary damages, and the sum of Three Hundred Fifty ($350.00) Dollars special making a total sum of $15,350.00 damages sustained by plaintiff, no part of which has been paid."

Plaintiff prayed for a judgment against the defendant for the sum of $15,350. Defendant denied generally the allegations of the complaint. Upon the issues thus joined, a trial was had before the court sitting with a jury. The trial resulted in the plaintiff securing a judgment against

the defendant for $1,180.70 general damages, $500 exemplary damages, and $319.30 special damages. The defendant appeals. He seeks a reversal of the judgment upon the following grounds: (1) That the judgment is excessive; (2) that the trial court erred in refusing to admit certain evidence offered by the defendant; and (3) that the trial court erred in one of its instructions to the jury.

The evidence offered on behalf of the plaintiff tends to establish these facts: That the plaintiff is the owner of a farm located about one mile southwest of Clearfield, Davis county, Utah; that, at the time complained of, plaintiff had the right to the use of certain irrigation water which the defendant diverted to his own use; that, when plaintiff discovered that his irrigation water had ceased flowing, he went up the ditch to ascertain what had become of it; that. as he approached the headgate where his water had been diverted, he heard the defendant say "You son-of-a-bitch I will kill you"; that the defendant was concealed in some weeds; that defendant struck plaintiff just back of the left ear with a shovel without any cause or provocation; that defendant then threw the plaintiff into an irrigation ditch, and with his knees and fists beat plaintiff all over his body, and tried to prevent plaintiff from breathing by holding his nose; that plaintiff succeeded in getting away from defendant and went home; that the defendant followed the plaintiff to his home; that plaintiff was so exhausted as a result of his struggle with, and the injury inflicted by, the defendant, that he did not have enough strength to get into his home without the assistance of his wife; that, as soon as plaintiff was within his house, his wife locked the door; that defendant tried to get into plaintiff's house, and, when he found the door locked, he swore and cursed and threatened to kill both the plaintiff and his wife; that plaintiff was put to bed and two doctors called to attend his injuries. One of the doctors thus described plaintiff's injuries:

"He was bleeding from the side of his head. * * * I looked at his wound and I noticed as near as I can describe it, directly over the mastoid, or behind the ear, he had been struck with something sufficiently hard so the external plate or mastoid process was standing at right angles to the process itself, exposing all the cells to the outside, full of dirt; hair wet, sandy, muddy; the soil was more sandy than mud; you could tell from his appearance considerable shock and no doubt a lot of pain."

The plaintiff was immediately taken to a hospital, where he remained for nine days. He was then taken to his home, but he was in such pain that after he had been at home for only a few hours he was again removed to the hospital, where he remained for treatment for an additional nine days. Soon after he was taken back to the hospital the second time his eardrum bursted. As a result of the injuries, plaintiff is totally deaf in the left ear. The evidence offered by plaintiff also tends to show that he was unable to do any labor for a period of sixty days after he was injured, and that he had not regained his former strength at the time of the trial. The costs of hospitalization and medical attention amounted to approximately $300.

Counsel for appellant at the oral argument and in their briefs laid considerable stress upon an incident which occurred during the course of the trial. While the plaintiff was testifying, he was asked to place his finger in his right ear. He did so. He was asked a number of questions to which he made no response. He was then asked, "You cannot hear a word I am saying, can you?" to which plaintiff responded "I cannot hear nothing." It is urged that, because the answer was responsive to the question, it necessarily follows that plaintiff was able to hear with the ear that he claimed was injured. The conclusion contended for does not necessarily follow. The fact that the answer was responsive to the question may have been a mere coincidence. There is ample evidence in the record to justify a finding by the jury that plaintiff lost the hearing in his left ear because of the injury complained

of. A specialist on ear diseases who treated the plaintiff after his injury testified that he had used every known means to ascertain if the plaintiff was feigning deafness in his left ear, and that from all the tests which he applied the plaintiff had completely lost his hearing in his left ear. Upon this record the damages awarded to the plaintiff are justified by the evidence.

The defendant was called as a witness in his own behalf. He was asked to relate what occurred at the time plaintiff received the injury complained of. In response to the question, the defendant testified:

"Well I got ahold of his (plaintiff's shoulder with my right hand and left hand got ahold of that little post, I cannot get the shovel away from him; I climbed over his fence and I was trying to get that shovel away, swaying one side to the other, the hind end that shovel before I could take it away from him. It cut the ear on the side. * * * Well, after I took the shovel away from him, he come to me and started to kick me and fight with me. I tell him to quit. He won't quit. So we grabbed them again and wrestled, so we are in his ditch. I slipped and fell in on him, on top of him. He stuck his big thumb in the side of my mouth trying to tear my lip out. At the same time I think I bite his finger off. So I loose; I done it."

This and similar evidence was, upon plaintiff's motion, ordered stricken, and the defendant was not permitted to give his version of what occurred at the time plaintiff claims he was injured. The defendant took timely exceptions to these rulings of the court, and assigned such rulings as error. It is earnestly urged on behalf of the defendant that he was entitled to give his version of what occurred at the time plaintiff was injured. Plaintiff's counsel contends that the evidence was properly excluded from consideration by the jury because such evidence tended to show that defendant acted in self-defense; that defendant, having failed in his answer to plead facts in justification of his acts or in mitigation of damages is precluded from offering evidence tending to establish such defenses.

Comp. Laws Utah 1917, § 6575, provides that the answer of the defendant must contain:

"1. A general or specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief, or a specific admission or denial of some of the allegations of the complaint, and also a general denial of all the allegations of the complaint, not specifically admitted or denied in the answer;

"2. A statement of any new matter constituting a defense or counterclaim."

It is defendant's position that the rejected evidence falls within the provision of subdivision 1 of the law above quoted, while the position of plaintiff is that such evidence falls within the provision of subdivision 2. The distinction between those facts which the defendant may show and those facts which he may not show under an answer containing only a general denial is sometimes difficult of application in practice, although the principles of law upon which the distinction rests are elementary and simple. While there is some conflict in the adjudicated cases in the various jurisdictions with Codes similar to our Code, it may be said the great weight of authority supports the rule which is thus stated in Pomeroy's Code Remedies (5th Ed.), as follows:

"The general denial puts in issue all of the material averments of the complaint or petition, and permits the defendant to prove any and all facts which tend to negative those averments or some one or more of them. Whatever fact, if proved, would not thus tend to contradict some allegation of the plaintiff's first pleading, but would tend to establish some circumstance, transaction or conclusion of fact, not inconsistent with the truth of all those allegations, is new matter. It is said to be 'new' because it is not embraced within the statements of fact made by the plaintiff; it exists outside of the narrative which he has given; and proving it to be true does not disprove a single averment of fact in the complaint or petition, but merely prevents or destroys the legal conclusion as to the plaintiff's rights and the defendant's duties which would otherwise have resulted from all those averments admitted or proved to be true." Section 597, p. 922.

"As the allegations of the complaint or petition controverted by the denials of the answer determine the nature and extent of the evidence admissible under such denials, it follows that this evidence may be sometimes negative and sometimes affirmative. Herein lies the source of much confusion and uncertainty as to the character

of the defendant's proofs and defenses, and as to their admissibility under the general denial. Evidence in its nature affirmative is often confounded with defenses which are essentially affirmative and in avoidance of the plaintiff's cause of action, and is therefore mistakenly regarded as new matter requiring to be specially pleaded, although its effect upon the issues is strictly negative, and it is entirely admissible under an answer of denial. In other words, in order that evidence may be proved under a denial, it need not be in its own nature negative; affirmative evidence may often be used to contradict an allegation of the complaint, and may therefore be proved to maintain the negative issue raised by the defendant's denials." Section 547, p. 897.

The cases cited in the briefs of the parties to this proceeding are in accord with these principles of law.

In this case the manner in which the plaintiff received his injury was a subject-matter of judicial inquiry under plaintiff's complaint. The plaintiff claims that the defendant willfully and maliciously inflicted the injury complained of. This is denied by the defendant. ■ Plaintiff was thus advised by defendant's answer that he must prove that the injury concerning which he complained was willfully and maliciously inflicted by the defendant. Any evidence which tended to show that the defendant did not willfully or maliciously inflict the injury complained of was clearly admissible under the general issue. Such evidence was in no manner new material, but was calculated to show that the claim made by the plaintiff was not true. By his general denial, the defendant was clearly entitled to give his version of how the plaintiff received his injury. If the fact be that plaintiff was accidentally injured with his own shovel while the defendant was protecting himself from being struck by the plaintiff, such fact was clearly material, and the defendant was entitled to establish such fact under his general denial. The trial court was in error in not permitting the defendant to give his version of the manner in which the plaintiff received the injury complained of. The error requires a reversal of the judgment.

Complaint is also made because the court instructed the jury that:

"There is no issue in this case as to self defense or justification for defendant's acts, if you are convinced by a preponderance of the evidence that defendant committed any one or more of the acts complained of. Under such circumstances any evidence that may have been introduced, if any there was, tending to show that defendant acted in self defense, or tending to show that he was justified in doing such acts as he may have done, must not be considered by you as self defense or justification, even though you may believe that it shows or tends to show justification and self defense, or either."

Counsel for the defendant in his opening statement to the jury stated: "I am claiming nothing by the way of self defense justification whatever," and again in answer to an inquiry from the court he repeated: "I say, we are not claiming anything for self defense or justification." In view of the repeated statements so made by counsel for the defendant, it may be seriously doubted if defendant is in a position to question the instruction complained of. As the judgment must be reversed for the reason already indicated, and as the question presented on the instruction is not likely to arise upon a new trial, it is not necessary to decide, and we do not decide, that question.

The judgment is reversed and the cause remanded to the district court of Davis county, with instructions to grant a new trial. Appellant is awarded his costs on appeal.

CHERRY, C. J., and STRAUP, FOLLAND, and EPH-RAIM HANSON, JJ., concur.