## STEVENS & WALLIS v. GOLDEN PORPHYRY MINES CO.

No. 4936. Decided January 30, 1933. (18 P. [2d] 903.)

*Allen G. Thurman,* of Salt Lake City, for appellant.

*N. W. Sonnedecker,* of Salt Lake City, for respondent.

STRAUP, C. J.

Stevens & Wallis, a printing company, brought this action to recover from the defendant, Golden Porphyry Mines Company, $189.25 for printing a prospectus of its mine and operations. The case was tried to the court who found against the plaintiff and rendered a judgment dismissing the complaint. The plaintiff appeals.

From the record and briefs it appears that the court dismissed the complaint on merits and with prejudice, for the reason, as viewed by the court, that the plaintiff had not proved the contractual relation between the parties as alleged in the amended complaint and on which the action was tried. By the charging part of the amended complaint it was alleged:

"That on or about May 21, 1927, the plaintiff and defendant entered into an oral contract in effect as follows: That plaintiff offered and

was to be supplied plaintiff by T. Ben Meldrum for the agreed price of $189.25; that defendant accepted said offer and agreed to pay plaintiff said sum of $189.25 for the printing of said prospectus when Mr. Meldrum gave proof that he had mailed the second letter in a series of advertising letters that the said Meldrum was to mail for defendant."

It was further alleged that the plaintiff had performed all of the obligations on its part to be performed; that "the said T. Ben Meldrum mailed said second letter and gave proof of the mailing thereof to the defendant," but that the defendant failed to perform the contract on its part to be performed; that the sum of $189.25 was due and owing from the defendant to the plaintiff on the contract; that the whole thereof remained unpaid; that the plaintiff demanded payment thereof but the defendant failed and refused to pay the same or any part thereof, whereupon judgment was prayed against the defendant for $189.25, together with interest. To that complaint the defendant filed a general denial.

With respect to the issues, the court made only this finding:

"That neither on or about the 21st day of May, 1927, at Salt Lake City, Utah, nor at any other time or place, did the plaintiff offer to print a prospectus or any other printing for the defendant, Golden Porphyry Mines Company, at the agreed price of $189.25 nor at any other price; nor did the said defendant accept an offer from the plaintiff, Stevens & Wallis, Incorporated, to do any printing for it at any time or place or at all."

The finding is assailed on the ground that it is contrary to and against the evidence; the particulars of which are stated in the assignment. On the record it appears that January 28, 1927, a written agreement, referred to as Exhibit C, was entered into by and between T. Ben Meldrum and the Golden Porhyry Mines Company, by the terms of which Meldrum agreed to furnish:

"An initial direct-by-mail sales campaign consisting of the following: Four sales letters, together with subscription blanks, return post-

cards, stationery and stamps for the sum of $500.00. This initial campaign to consist of 3000 investors, and the mailings to be made at intervals of not to exceed 10 days apart, after the first letter is mailed. It is understood that one of these four mailing pieces is to be a prospectus of not more than four pages; that the mines company agreed to pay Meldrum "in addition to the $500.00 costs of this campaign a 10% commission of all money raised during this campaign, and all subsequent campaigns conducted by second party within a period of six months from date. Payment of stock shall be made immediately. Payment of half $250 shall be made when campaign is ready for mailing and the balance, $250.00, to be paid after the second mailing, or in lieu thereof, satisfactory credit made with printer to cover the amount of $250.00 in printing."

Meldrum, in pursuance of the contract, entered upon the discharge of his duties, and in the course thereof obtained bids for the printing of a prospectus of the property and operations of the mines company, shown by the record to consist of 3,000 copies. The plaintiff was the lowest bidder, who agreed to print the prospectus for $189.25. Thereupon, Meldrum, May 20, 1927, addressed a letter to the plaintiff stating:

"You are hereby authorized to print a six page prospectus according to your quotation of May 18th.

"This letter will serve as an order on the Golden Porphyry Mines Corporation to pay you the sum of $189.25 out of the total of $250.00 which is due on a contract entered into January 28th with this Company."

On receipt of the letter, and before the printing company undertook the printing, a representative of the printing company called at the office of the mines company and exhibited the letter to the president of the company, W. H. Voyles, and requested the company's indorsement thereof. The representative testified that upon exhibiting the letter the printing of the prospectus and the cost thereof were discussed between him and Voyles, and that Voyles told him "to proceed with the printing and that the Mines Company would pay the bill," that he told the representative "to go on with the printing of the prospectus and that the Mines Company

would pay for it"; and that thereupon Voyles, as president of the mines company, wrote the following on the bottom of the letter:

"*Salt Lake City, May 21, 1927.*

"*Approved for payment when Mr. Meldrum submits proof to Golden Porphyry Mines Company that he has mailed his second letter on contract to said company.*

"Golden Porphyry Mines Company,
"By W. H. Voyles, Pres."

The representative further testified that in pursuance of such notation or indorsement and of what the president of the mines company stated to him, the plaintiff printed and delivered to Meldrum 3,000 copies of a prospectus in accordance with the contents of a prospectus submitted to it by Meldrum; that after the printing was completed and the prospectus delivered to Meldrum, the representative, on behalf of the printing company, demanded payment of Voyles as the president of the mines company; that Voyles told him the company did not then have money to pay the bill; that another officer of the company was in Montana, and that his return was expected shortly with moneys to pay the bill. Further testimony was given of demands made on the mines company for payment, and that the failure to pay each time was put upon the ground that the company was without funds to pay the bill, and that as soon as the company had funds the bill would be paid.

Further testimony was given by the plaintiff to show that Meldrum had submitted proof to the mines company that he had mailed and sent out the second letters and the prospectus in accordance with his contract with the mines company; and Meldrum himself testified that all that had been done by him.

Voyles testified on behalf of the defendant that when the representative presented the letter of Meldrum to the plaintiff, the representative desired to have the mines company agree at all events to pay for the printing of the prospectus, but that Voyles declined to do that; that thereupon Voyles

called the attorney for the mines company on the telephone, explained the situation to him, and that the attorney advised him to indorse the letter "with a reservation," and directed the kind of reservation to be stated in the indorsement, and that in pursuance thereof Voyles indorsed on the letter, or wrote on the bottom thereof, the italicized portions thereof, that the mines company approved payment when Meldrum submitted proof that he had mailed his second letter as by his contract with the company provided.

There thus is no dispute between the plaintiff and the defendant as to the contents of the indorsement made by the mines company. Voyles further testified that the prospectus was to be printed and used for the mines company; that the mines company was to become liable and had agreed to pay for the printing only upon the terms and conditions stated in the indorsement; and that Meldrum "never gave me proof that he had mailed the second letter nor did I know that he had ever mailed it."

At the conclusion of the evidence the court rendered an oral opinion expressing his views of the case which was transcribed by the reporter and made a part of the bill of exceptions. Such opinion of course is not "the decision" of the case and may not be regarded as such. As held by this court, the decision of a case consists of the findings, conclusions, and decree; that while the opinion of the trial court "may be of great importance on account of the information which it imparts respecting the legal principles which governed the court," and may be used by counsel in argument as disclosing "the reasons given by the court for the judgment"; nevertheless such reasons are not binding on the reviewing court and may not be considered as controlling the findings nor as supplying a want of them. *Victor Gold & Silver Mining Co.* v. *National Bank,* 18 Utah 87, 55 P. 72, 72 Am. St. Rep. 767; *Grand Central Min. Co.* v. *Mammoth Min. Co.,* 29 Utah 490, 83 P. 648; *Utah Com'l & Sav. Bank* v. *Fox,* 44 Utah 323, 140 P. 660; *Miller* v.

*Marks,* 46 Utah 275, 148 P. 412; *Headlund* v. *Daniels,* 50 Utah 381, 167 P. 1170.

In referring to the evidence, the trial court by its opinion, among other things, observed that

"the condition of the endorsement, the condition of payment has been fulfilled because the letters have been sent out. There is no question in the court's mind but that the letters have been sent out. There is no question, therefore, but that the particular condition has been fulfilled. * * * The court will find, in the first place, that the conditions have been complied with."

The court, however, further observed:

"Unquestionably the $189.25, I think is owing from the defendant to plaintiff, but it is on an order given and an acceptance of that order which has never been pleaded, which should have been pleaded, possibly, in the form of another count. If it had I think the plaintiff could prevail, but I cannot go out of the pleadings and twist them and actually give judgment entirely outside of the pleadings. I must stick to the issues, as made, and for that reason judgment will have to be entered for the defendant."

We refer to this, not to control the findings nor to supply a want of them, but to show, and as in effect is disclosed by the findings and the conclusions themselves, that the plaintiff failed, not for want of proof, but because of a material variance between the allegations of the complaint and of the proof. It is of course familiar doctrine that the plaintiff cannot recover upon a different cause of action from that which is alleged, and that he must recover according to the allegations of his complaint; that courts cannot make the complaint for one thing stand for a different thing. In other words, the recovery must be secundum allegata et probata, and as was stated by Mr. Justice Swayne in the case of *Washington, A. & G. R. Co.* v. *Bradleys,* 10 Wall. 299, 303, 19 L. Ed. 894, that "allegations and proofs must agree" and that "averments without proofs and proofs without averments are alike unavailing," and that the judgment must conform to the scope and object of the pleadings.

As bearing upon the subject, we also have a statute, Comp. Laws Utah 1917, §§ 6615, 6616, and 6617, ■ which provides:

Section 6615. "No variance between the allegations in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that a party has been so misled, the court may order the pleading to be amended, upon such terms as may be just."

Section 6616. "Where the variance is not material, as provided in the next preceding section, the court may direct the fact to be found according to the evidence, or may order an immediate amendment, without costs."

Section 6617. "Where, however, the allegation of the claim or defense to which the proof is directed is unproved, not in some particular or particulars only, but in its general scope and meaning, it is not to be deemed a case of variance within the last two sections, but a failure of proof."

Seemingly, the trial court took the view that since by the complaint the plaintiff alleged that a contract was entered into between it and the defendant whereby "the plaintiff offered and agreed to print for the defendant" a prospectus, and that "the defendant accepted such offer" and agreed to pay plaintiff the sum of $189.25 for the printing of it "when Meldrum gave proof that he had mailed the second letter in the series of advertising letters"; and since by the proof, as viewed by the court, the indebtedness or liability of the defendant arose "on an order" given by Meldrum to the plaintiff on the defendant who accepted the order, and thereby agreed to pay for the printing of the prospectus on the condition, or when Meldrum submitted proof to the defendant that he had mailed the second series of letters, etc., that since by the complaint a direct agreement of payment by the defendant was alleged on the condition stated in the complaint and by the proof no such an agreement was shown, but one where an "order" was given on the defendant and accepted by it whereby it agreed to pay for the printing on the same condition alleged in the complaint, there was a

material variance, and one, too, "which actually misled" the defendant in maintaining its defense upon the merits, of which no such complaint was made.

We think the proof was within the scope of the complaint. In substance the complaint was not on one cause of action and the proof on another and different cause. In its essentials the proof adduced responds to the alleged primary right of the plaintiff and the duty and breach of the defendant, the primary right of the plaintiff to compensation for printing the prospectus and the duty of the defendant to pay therefor on the alleged condition stated in the complaint and the breach thereof. The essence of the complaint and of the proof was that the defendant agreed to pay for the printing of the prospectus upon the condition when Meldrum submitted proof that he had mailed the second series of letters. Whether that primary right was made evident by an oral agreement or by the defendant accepting an order to pay for the printing on the stated condition was not the essence of the cause of action; at any rate, there was no such departure or variance as to mislead the defendant to its prejudice. When it was held, as it was by this court, in the case of *Skeen* v. *Skeen,* 76 Utah 32, 287 P. 320, that no departure or material variance there existed, it is difficult to perceive how any here existed. Bearing on this, and also in support thereof, are the cases of *Culmer* v. *Clift,* 14 Utah 286, 47 P. 85, and *Hecla Gold Min. Co.* v. *Gisborn,* 21 Utah 68, 59 P. 518.

We think the finding made by the court is against and is not supported by the evidence. The finding ought to have been that an agreement was had or was entered into by and between the parties, whereby the defendant agreed to and became obligated to pay for the printing of the prospectus when Meldrum, as alleged in the complaint and as shown by the acceptance or indorsement of the order, submitted proof to the defendant that he had mailed the second series of letters; and the court ought to have made a further finding, which was not done, as to whether such condition was or was not complied with.

The judgment is reversed, and the case remanded for a new trial.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.