HEPWORTH v. COVEY BROS. AMUSEMENT CO.

No. 6051.   Decided June 22, 1939.   (91 P. 2d 507.)

*Moyle, Richards & McKay,* of Salt Lake City, for appellant.

*Willard Hanson, Stewart M. Hanson,* and *Parley P. Jenson,* all of Salt Lake City, for respondent.

PRATT, Justice.

James Hepworth was a paid guest at a public dance. The ballroom was owned and operated by the Covey Brothers Amusement Company. Hepworth sued the Company for damages arising out of false imprisonment. He recovered a verdict of $1,000. On motion for a new trial the lower court gave him the choice of accepting a $500 judgment, or

submitting to the new trial. He accepted the $500 judgment. The Amusement Company has appealed. There is substantial evidence in the case to support the following:

At the dance, Hepworth met two friends, Abel and Peck, the latter a minor. While they were sitting in the lounge, Peck got up, walked approximately fifteen feet away, took a drink out of a bottle, and then came back to the seat. Two floorwalkers of the Company, one a city police officer on special duty and in uniform, came up to them. The officer reached into Peck's pocket, took the bottle, then started away with Peck. Suddenly he stopped, came back, and using the expression: "Well, just to make sure we haven't made any mistake about this," felt over the pockets of Hepworth and Abel. Finding nothing, he and the other floorwalker left the ballroom with Peck. Several minutes later, the two returned and the officer asked whose liquor it was. Hepworth and Abel disclaimed any knowledge of it. The officer then said: "You come down stairs with us and we will see whose it is." Hepworth remonstrated. The officer then said: "If you would answer a civil question you would not have to go." He continued: "Let's take a walk." The four of them crossed the dance floor walking four abreast for a while, then, due to the crowd of dancers, they walked in a column of twos, Hepworth and Abel in the front, finally resuming the four abreast postion until they entered a little room near the entrance. Here the following entry was made as to Hepworth: "Name: James Hepworth; Address: 249 Orchard; Offense: With fellows who had bottle; Location: N. E. corner; Date: 1/18/37; Age: 26; Remarks: Peck and Abel; Action Taken: Permitted to stay; Officers: Perry, Ralph." The officer then said: "We are booking you both for possession of liquor and if we have any more trouble, we will take you up and book you at the police station." Again Hepworth remonstrated about his treatment. The officer replied: "You should be more choosey about your company."

And upon the question of damages, the following facts:

Hepworth was a student at the University of Utah and also an assistant instructor in the Modern Language Department. He attended the dance expecting to meet a young lady, but not in anticipation of meeting either Peck or Abel. He and the young lady met and danced together. She saw him crossing the floor with the officers and others. Hepworth claimed he suffered considerable embarrassment in view of the fact that some of his students were present and it became known about the University that he had been arrested. One student in particular he remembered seeing there, but could not give his name. One young lady, with whom he sought a dance, informed him that her dances were all taken. Hepworth attributed this to the incident. The officers claimed Hepworth had liquor on his breath; the young lady, with whom he danced, contended that he did not. Hepworth suffered no loss so far as his position in the Modern Language Department of the University was concerned.

Upon the motion for a new trial, affidavits were submitted upon the following alleged errors: One of the jurors, a lady, was accused of having been influenced in her verdict against the Company by her expressed antagonism to one of the Company counsel; and that the verdict was obtained by averaging the amounts written on secret ballots. Counter-affidavits were filed upon the last point, but not on the first.

Appellant groups its many assignments of error as follows:

(1) There is no evidence from which as a matter of law it can be adduced that the defendant was guilty of unlawful arrest or false imprisonment;

(2) No damage resulted from the acts of the defendant or its agents;

(3) The defendant is entitled to a trial by qualified jurors free from bias and prejudice; and

(4) The verdict is not sustained by the evidence but based on passion and prejudice, and, as a matter of law, the motion for a new trial should have been granted.

We wish to invite attention to a distinction in the law which we believe has been confused in the briefs. False arrest may be committed only by one who has legal authority to arrest or who has pretended legal authority to arrest. False imprisonment may be committed by anyone who imprisons without legal right. One who commits a false arrest of another may be liable in damages for false imprisonment, but from this we must not reason that if there is a failure of proof of false arrest, of necessity there is a failure of proof of false imprisonment. False arrest is merely one means of committing a false imprisonment. False imprisonment may be committed without any thought of attempting an arrest.

"Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain or to go where he does not wish to go, is an imprisonment. * * * The essential thing is the restraint of the person. * * * If the words or conduct are such as to induce a reasonable apprehension of force, and the means of coercion are at hand, a person may be as effectually restrained and deprived of liberty as by prison bars. * * *" 11 R. C. L. 793, 794, sec 5.

That such restraint may occur wrongfully without regard to the thought of making an arrest, we cite merely the cases of *Whittaker* v. *Sanford*, 110 Me. 77, 85 A. 399, Ann. Cas. 1914B, 1202; and *Salisbury* v. *Poulson*, 51 Utah 552, 172 P. 315. In the former, a yacht captain would not let a woman off the yacht; in the latter, a dentist would not let his client out of the office until her bill was paid.

The lower court in its instruction number 4, correctly defined false imprisonment, using practically the wording we have quoted from R. C. L. above. Defendant however, in its requests for instructions emphasizes the elements of what constitutes an arrest. The implication is: That if the officer did not intend to arrest Hepworth, then the latter is not entitled to recover. We have no quarrel with the ruling of the case of *State* v. *Beckendorf*, 79 Utah 360, 10 P. 2d 1073, in its definition of an arrest; but we do

reject any thought that whether or not the officer intended to make an arrest governs this case. It is more than likely that Hepworth was entirely ignorant of the necessary elements of making an arrest. If, however, the officer's acts and words were such as to reasonably create in Hepworth's mind the belief of a necessity of conforming to those demands or suffer the consequences, and Hepworth conformed rather than to chance the consequences, he was restrained of his liberty. Call the acts and words of the officer what you may—an arrest or not—the restraint was just as effective. The jury might have well believed from the facts that Hepworth's liberty was restrained quite aside from whether or not they believed the officer intended making an arrest. It would not have been unreasonable for them to believe that the officer, as a matter of fact, did make an arrest. He certainly acted out the conduct of an officer arresting one for investigation, except the "booking" of the culprit, which, here, occurred at the dance hall rather than the police station.

Defendant must fail on its first point.

The matter of damages is covered by points 2 and 4, above. Plaintiff's allegation of damage reads as follows: "* * * embarrassed and humiliated this plaintiff and caused disgrace to come upon him in the eyes of the people who saw * * *," the complaint continuing with a recitation of the wrongs done him. It is our opinion that there was no evidence of his having been disgraced in the eyes of those present. Thus his damages are limited to the embarrassment and humiliation suffered by him. These are elements of damage in a false imprisonment case. Cooley on Torts, 4th Ed., Vol. 1, page 381, Sec. 114a. There is no legal rule for measuring these damages in dollars and cents; the amount allowed therefor lies largely within the discretion of the jury. 15 Am. Jur. page 621, Sec. 205. In this case the lower court thought the award excessive, and after acceptance by plaintiff, made a substantial reduction. The question of the excessiveness of the verdict is

generally one for the determination of the trial court in the first instance. 15 Am. Jur. page 622, Sec. 205. Its action in the matter will not be disturbed unless an abuse of discretion is shown. It does not follow from the fact that the lower court thought the verdict excessive, that he also thought it the result of bias or prejudice. *Eleganti* v. *Standard Coal Co.,* 50 Utah 585, 168 P. 266. Excessive verdicts may arise in cases where the jury have been absolutely impartial It may arise out of a misunderstanding of the rule of ascertaining damages; or it may arise out of an inability to apply the rule properly. We cannot say that the lower court abused its discretion.

Appellant's remaining point, No. 3, we believe must be resolved against it. Counsel argue that when duly examined by counsel, the juror, who is alleged to have made a biased statement, concealed her prejudice against counsel. We have nothing in the record before us showing what questions were asked her indicative of such a conclusion. For all we know, an examination of this particular juror may have been waived upon the subjects pertaining to her bias and prejudice. If she was examined, it may be that no question at all was propounded to her about her knowledge of, or acquaintanceship with, either counsel. To uphold appellant's contention on this point, are we to guess what happened in the jury examination? But there is a much stronger argument against sustaining this alleged error. The weight of authority is that a verdict may not be impeached by affidavits of the jurors as to what was said or done in the jury room except as the statute permits such affidavits. *People* v. *Ritchie,* 12 Utah 180, 42 P. 209; *Black* v. *Rocky Mountain Bell Telephone Co.,* 26 Utah 451, 73 P. 514. Revised Statutes of Utah, 1933, 104-40-2, reads:

"The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved, for any of the following causes materially affecting the substantial rights of such party:

          *      *      *      *

"(2) Misconduct of the jury; and whenever anyone or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by resort to a determination by chance, such misconduct may be proved by the affidavit of any one of the jurors."

The case of *Lund* v. *Third Judicial District Court,* 90 Utah 433, 62 P. 2d 278 (although it holds that a discovery after trial that a juror had improperly withheld facts relating to his qualifications affecting his right to sit as a juror by giving false answers as to his qualification or bias, and such was unknown to the party at the time, a new trial will be granted), does not hold that proof of the falsity of answers upon a juror's qualification may be given by affidavit of statements made by the juror during the jury's deliberations upon the case. The section of the statutes above quoted limits the use of such affidavits to the question of a chance verdict.

Upon the point of the verdict having been reached by chance or by what is some times spoken of as a quotient verdict, the affidavits are in conflict. This placed the burden of deciding the issue upon the shoulders of the lower court. We will not upset that decision unless an abuse of discretion is shown. None is shown here. *Skeen* v. *Skeen,* 76 Utah 32, 287 P. 320; *Lund* v. *Third Judicial District Court,* 90 Utah 433, 62 P. 2d 278; *Callahan* v. *Simons,* 64 Utah 250, 228 P. 892.

The judgment of the lower court is affirmed. Costs to respondent.

MOFFAT, C. J., and WOLFE, LARSON, and McDONOUGH, JJ., concur.