## MECHAM v. FOLEY et al.

No. 7637.   Decided September 11, 1951.   (235 P. 2d 497.)

See 6 C. J. S., Assault and Battery, sec. 56. Assault and Battery, exemplary damages for. 4 Am. Jur., Assault and Battery, secs. 187 et seq.; 123 A. L. R. 1115.

*George E. Stewart, Jr.,* Roosevelt, *F. Henri Henriod,* Salt Lake City, for appellant.

*Rulon J. Larsen, L. O. Thomas,* Salt Lake City, for respondent.

WOLFE, Chief Justice.

This is an action to recover damages for assault and battery. It was tried without a jury and judgment was entered for the plaintiff, Le Roy Mecham, for $1,000 general and $100 punitive damages. The case was dismissed with prejudice against the Dry Gulch Irrigation Company. The defendant, Matthew Foley, appeals, contending that the court erred: (1) in dismissing the counterclaim because the evidence indicates that plaintiff was the aggressor; (2) in awarding punitive or general damages, neither being supported by the evidence; and (3) in awarding $1,000 general damages, such sum being grossly excessive.

The plaintiff is the owner of a ranch located five miles west of Roosevelt, Utah. On several prior occasions, he had complained to the officers of the Dry Gulch Irrigation Company that he had not received his fair share of water. Defendant was employed as ditch rider for the Irrigation Company. His job was to regulate and supervise the distribution of water to the shareholders in the Irrigation Company. Plaintiff claimed that a week before the fight occurred, his turn to the use of the water had been skipped. He went to see an attorney and asked for legal advice concerning the alleged discrimination. On Saturday, May 27, 1950, the plaintiff and defendant met in the Commercial Club in Roosevelt. A conversation took place between them in which defendant stated that he thought the plaintiff's neighbor, Mr. Milligan, was going to give the water to plaintiff after he was through, but plaintiff said Milligan had

not been so directed by the defendant. Defendant told the plaintiff that he should have come to him about the matter; that an attorney could not help him get his water; that he as ditch rider was responsible for all water turns, to which the plaintiff replied, "The next time I talk to you, you better have a referee there."

The fight occurred the following Tuesday afternoon at the plaintiff's ranch. The plaintiff testified that he had just closed the pig pen gate when he was struck over the left temple with what he thought to be a blackjack. He did not see what he was struck with, but momentarily glimpsed the face of the defendant, then he blacked out. He testified that he had no recollection of what occurred until he regained consciousness on the front porch of his house. He had taken quite a beating. His nose was bloody, his left eye soon swelled shut, there was a welt on the side of his head and his jaw ached considerably. The defendant stated that he parked his pick-up truck on the road and while his wife waited for him, he walked approximately 500 feet to the plaintiff's corral; that they talked about pasturing some cattle in plaintiff's field and walked over to a shed together where defendant said that because the water was running over the road that plaintiff could take an extra turn, that plaintiff thereupon cursed him and said, "what kind of [obscenities] are you trying to pull on me" and hit him. Defendant admits that a fight took place, that each time plaintiff tried to rush him defendant would knock him down. Plaintiff weighs 183 pounds—the defendant 153. After plaintiff quit fighting and lay motionless on the ground, the defendant claims he sat him up, put his hat on and left. There was no other evidence than the conjecture of the plaintiff concerning the use by defendant of a blackjack. The defendant stated it was a fist fight, that nothing else was used but their fists. Defendant's shirt sleeve was torn and his cheek skinned. This presents two conflicting versions of the place at which the fight occurred and who struck the first blow. The defendant's wife sitting in the

cab of the pick-up truck some 500 feet away testified that she witnessed the entire fight and saw the plaintiff strike the first blow. On the other hand, plaintiff's mother who resides at the Mecham ranch with plaintiff, later went out. into the corral and she stated that she found five cigarettes scattered all the way from the pig pen gate to the shed where defendant says the fight started. The inference to be taken from this evidence is that the cigarettes flew out of plaintiff's shirt pocket while the fight was in progress and that it must have started where plaintiff says he was first struck.

The trial court took a view of the premises and observed the demeanor of the witnesses. There is evidence to support his findings "that the striking by defendant Matthew Foley was malicious, willful, unprovoked and without cause." The trial court chose to believe plaintiff's version of the fight.

Defendant contends that the evidence does not support any award of punitive damages. But if we are to believe that plaintiff was struck without any warning and then couldn't remember what took place, we must hold that there is a basis upon which punitive damages can be assessed. In Vol. 4 of American Jurisprudence, Assault and Battery, p. 216, it is stated:

"As a general rule, exemplary or punitive damages may be allowed for an assault and battery committed wantonly, maliciously or under circumstances or aggravation."

This doctrine has been applied by this court in *Marble* v. *Jensen*, 53 Utah 226, 178 P. 66; *Johanson* v. *Huntsman*, 60 Utah 402, 209 P. 197; and *Apostolos* v. *Chelemes*, 77 Utah 587, 298 P. 399. To justify punitive damages for an assault and battery, actual malice may be inferred from the fact that an assault occurred; there need be no direct proof of ill will or intent to injure, 123 A. L. R. 1122. It was, therefore, not error for the trial court to award to plaintiff $100 punitive damages.

A review of the record does not reveal the exact amount of special damages. The plaintiff expended $2.15 for pills and ointment, and approximately $5 each for six different doctors which he visited. The only receipts in evidence as exhibits are two statements for $5 and one for $20 for X-ray services. The total amount for medicine and treatment does not exceed $52.15. In view of this fact, defendant argues that the judgment for $1,000 general damages is grossly excessive. A photograph taken of plaintiff three days after the fight occurred shows that he has a "shiner" on the left eye—nothing more. No photograph was taken of the left side of his head where he claims that a large bump was raised which remained two months. Plaintiff testified that for a week his jaws were so sore he could hardly open them to eat; also that he was bothered by several sleepless nights and that he has had headaches since the time of the fight. The only medical testimony is found in the deposition of Dr. Harry Berman of Salt Lake City. He testified that the injury may result in permanent damage. Mr. Mecham was found to have 20-20 vision in the right eye and 20-25 in the left eye, which was stated to have been corrected with eye glasses. The record does not show what the plaintiff's vision was before the fight occurred nor did the doctor state that in his opinion the slightly defective eyesight was caused by any blow. The extent of any permanent damage, if any, is very speculative.

The record shows that plaintiff had been in several prior fracases of one type or another. He had fought, argued with, or threatened other ditch riders and officers of the Irrigation Company. His reputation for peace and quiet in the community was described as "not so good." In *Marble* v. *Jensen,* 53 Utah 226, 178 P. 66, we held that in assessing damages, the shame, humiliation, loss of reputation and injury to personal feelings growing out of the assault and battery are elements that may properly be considered by the fact finder. To apply this rule

consistently means that the past conduct of the plaintiff, although it does not justify the battery, may be taken into consideration in mitigation of damages, *Robinson* v. *De-Vaughn,* 59 Ga. App. 37, 200 S. E. 213. In this case, it appears that a consideration of these elements would tend to diminish the damages.

The latest statement of this court concerning excessive verdicts may be found in *Duffy* v. *Union Pacific R. Co.,* 118 Utah 82, 218 P. 2d 1080, 1084.

We said:

"we must determine whether the present verdict is so grossly excessive and disproportionate to the injury that it can be said from such fact alone, as a matter of law that the verdict must have been arrived at because of passion and prejudice. If this can be said from the amount of the verdict returned by the jury, then the trial judge abused his discretion when he failed to conditionally grant a new trial."

In the instant case, the defendant has been punished by the judgment for punitive damages for making an unprovoked attack upon the plaintiff. Under the circumstances, we believe that the verdict is gross and excessive. It is ordered that the judgment appealed from be reversed and a new trial granted, with costs to appellant, unless respondent shall, within 15 days from the date of filing of this opinion, file in this court a remittitur in the sum of $500 and accept a verdict of $100 punitive and $500 general damages, a net verdict of $600; if such remittitur be filed, the judgment then to be modified in accordance therewith, and as so modified, affirmed with no award of costs on appeal to either party.

WADE, McDONOUGH and CROCKETT, JJ., concur.

HENRIOD, J., not participating.