# WHEAT v. DENVER & R. G. W. R. CO.

No. 7838.   Decided December 5, 1952.   (250 P. 2d 932.)

See 66 C. J. S., New Trial, sec. 209. New trial for excessiveness of damages. 39 Am. Jur., New Trial, sec. 142; 88 A. L. R. 943.

*Van Cott, Bagley, Cornwall & McCarthy, Clifford L. Ashton* and *Leonard J. Lewis,* Salt Lake City, for appellant.

*Rawlings, Wallace, Black, Roberts & Black,* Salt Lake City, *Wayne L. Black,* Salt Lake City, for respondent.

CROCKETT, Justice.

A coal chute which plaintiff Wheat was lowering to load the tender (coal compartment) of one of defendant's engines suddenly fell, injuring him. A jury awarded him damages of $17,000. In response to defendant's motion for a new trial, the trial court gave plaintiff the option of having one or of taking a reduction of the verdict of $10,000. Plaintiff accepted the latter alternative.

Defendant contends that a new trial should have been granted unconditionally because the jury's verdict was the result of passion and prejudice, and that the action of the trial judge indicates that such was his conclusion. An appraisal of this contention requires a brief review of the evidence.

On March 11, 1950, the plaintiff was working as a hostler (engine handler) in defendant's Pueblo, Colorado yards. The engine was stopped alongside a large bin to take coal. It was necessary to pull the free end of the coal chute, which was hinged to the side of the bin, down into the tender. The 700 or 800 pound weight of the coal chute was balanced by counter weights held by cables running over pulleys above. Standing in the tender, Mr. Wheat pulled on the rope hanging from the chute, bringing the handle down within about 10 inches of his reach, where it stuck. He jumped, grabbed the handle and jerked it several times; then, suddenly one of the counter-weight cables broke letting the chute drop so quickly that he could not get out of the way; it did not hit him but forced him to

double up; his elbow was thrust into his side, and he was thrown to a sitting position. He suffered injuries to his right shoulder, legs, elbow and back.

Examination of the cable showed evidence of an old partial break at the spot where the cable had finally broken through. Evidence also was adduced to show that coal chutes of this type in the yard were very hard to operate, often requiring the full strength of a man in order to lower them; that employees had complained concerning this fact.

After this occurrence, Mr. Wheat climbed down from the engine and remained at work, and although he testified that he suffered considerably from his injuries, he continued to work until April 5th, but as a fireman on a switch engine, at which job he could be off his feet. Meanwhile he had seen a doctor and on April 5th he left work in the middle of his shift because of distress and pain resulting from the injuries referred to and reported to the railroad hospital at Salida, Colorado. He was placed on a fracture board and his leg put in traction. On May 13th he went home, stayed there until the 22nd and then returned to the hospital for another three days. He was off work until December 25th. During this time he suffered pain in his shoulder, ribs, elbow and leg; he said that he could only stay up for about three hours a day. He further averred that although his condition had improved some, he was still suffering when he returned to work and did so because it was absolutely necessary for financial reasons.

Mr. Wheat's evidence was that before this injury he had complete use of his back and was free from pain, but that ever since had suffered pain and distress. His medical evidence corroborated this and indicated that in addition to the pain and distress referred to he had a definite limitation of motion in his lower back and that he would continue to have such disability.

Defendant's medical testimony sought to minimize plaintiff's injuries by showing that he had a history of similar

ailments including an injury to his shoulder from stepping into an engine pit in 1941, another minor railroad accident in 1943, and that in 1950 he had recounted to a doctor a history of pains in his back and shoulder dating back several years. Defendant's doctors said they found no organic basis for injury or pain, except a mild developmental, rather than traumatic, lumbo-sacro instability and an arthritic condition in his back. One of them agreed that there was a moderate tenderness of the entire rhomboid group of muscles of his back, diagnosing it as sprain. It was upon the basis of these injuries that the award of $17,000 was based.

Defendant does not question the power of the trial judge to order a remission of part of a verdict which he believes is excessive.[1] It maintains, however, that in the instant case the verdict is so excessive, that the whole verdict is so tainted with passion and prejudice that the judge should have unconditionally granted a new trial. In support of this contention, defendant points out the following oral comments made in open court by the trial judge:

"Let the record show that the motion for a new trial has been argued by both sides. The court is of the opinion that there was sufficient evidence of injury to go to the jury, but it is of the opinion that the amount, $17,000, is excessive, and that the *amount of $17,000 is evidence of both passion and bias and prejudice.* The defendant's motion for a new trial is granted, if the plaintiff does not in writing, consent to a reduction of the verdict from $17,000 to $10,000 on or before March 3, 1952." (Emphasis added.)

This, asserts the defendant, amounts to a finding of "passion and bias and prejudice." The court's written minute order made no such finding, simply stating:

"* * * The Court finds that the amount of judgment rendered of $17,000.00 to be excessive and that judgment be reduced to $10,000

---

[1]*Kennedy* v. *Oregon Short Line Ry. Co.,* 18 Utah 325, 54 P. 988; *Reddon* v. *Union Pac. Ry. Co.,* 5 Utah 344, 15 P. 262.

on or before March 3, 1952. If judgment is not accepted by the above mentioned date, then defendant is granted a new trial."

Oral statements of opinion by the trial judge made in connection with a ruling do not constitute findings nor judgments and will not modify or affect them if the ruling, finding, order or judgment is otherwise sound. In *Stevens & Wallis* v. *Golden Porphyry Mines Co.*,[2] this court stated:

"At the conclusion of the evidence the court rendered an oral opinion expressing his views * * *. Such opinion of course is 'not 'the decision' of the case and may not be regarded as such. * * * the decision of a case consists of the findings, conclusion, and decree; * * * such reasons are not binding on the reviewing court and may not be considered as controlling the findings nor as supplying a want of them."

And in *McCollum* v. *Clothier*,[3] we wrote:

"Oral statements of opinion by the trial court inconsistent with the findings and conclusions ultimately rendered do not affect the final judgment."

Of course, we are not here dealing with findings and conclusions and the decision of the court as they were referred to in the preceding excerpts; however, the situations are anologous to the present one so that their logic may be applied to the problem at hand. It may well be that, in analyzing the accuracy of a trial judge's ruling, this court would consider his oral statements if they indicated a complete misconception and misapplication of principles of the law. But where the ruling appears to be justified as a matter of law, expressions such as made by the trial judge in this case would not require a reversal of his action, his ruling being entitled to the presumption that it is correct.[4]

---

[2]81 Utah 414, 18 P. 2d 903, 904.

[3]121 Utah 311, 241 P. 2d 468, 472.

[4]*Palfreyman* v. *Bates & Rogers Construction Co.*, 108 Utah 142, 158 P. 2d 132.

·· ·We do not doubt that when a verdict is so grossly dispro-
portionate to any amount of damages which could have
fairly been awarded as to make manifest that the verdict
··was so suffused with passion and prejudice that the
defendant· could not have had a fair trial on the          ■
issues, the trial court should unconditionally grant
a new trial.[5] We say this notwithstanding certain state-
ments in our cases which may be interpreted to give a
contrary impression. *Duffy* v. *Union Pacific R. Co.*[6] con-
tains the following paragraph, subsequently quoted in
·*Mecham* v. *Foley*[7]:

"we must determine whether the present verdict is so grossly exces-
sive and disproportionate to the injury that it can be said from such
fact alone, as a matter of law that the verdict must have been arrived
at because of passion and prejudice. If this can be said from the
amount of the verdict returned by the jury, then the trial judge
abused his discretion when he failed to *conditionally* grant a new
trial." (Emphasis added.)

' Later in the opinion, the court notes that the verdict
appeared "to have been given under the influence of passion
and prejudice". and concluded that the trial court abused
its discretion in not either granting a new trial or request-
ing a remittitur. Accurately analyzed, the view of the
court is the above cases was undoubtedly that the award,
while excessive, was not so grossly excessive as to taint
and make invalid the whole verdict.

·· Notwithstanding what was said therein, we regard the
true rule to be that if the verdict is so excessive as to show
that it must have been motivated by prejudice or ill will
·toward a litigant, or that passion such as anger, resent-
ment, indignation or some kindred emotion has so over-

[5]See *McAfee* v. *Ogden Ry. & Depot Co.*, 62 Utah 115, 218 P. 98,
104, wherein it is stated, "When a verdict is so excessive that it clearly
indicates passion and prejudice, a new trial should be granted un-
conditionally."
· ·[6]118 Utah 82, 218 P. 2d 1080, 1084.
[7]120 Utah 416, 235 P. 2d 497, 499.

come or distorted the jury's reason that the verdict is vindictive, vengeful or punitive, it should be unconditionally set aside.

Numerous authorities attest this. An example, perhaps as good as any, is the case of *Tunnel Mining & Leasing Co.* v. *Cooper*,[8] wherein a verdict was rendered for $38,750, for personal injuries; the trial court ruled it excessive by -28,750, ordering reduction to $10,000 or a new trial. The Colorado Supreme Court held that it was so excessive as to show passion and prejudice as a matter of law and that the defendant had the absolute right to a new trial. However, mere generosity toward the plaintiff, or careless or inaccurate assessment of excessive damages would not impel the conclusion that the verdict was so tainted as to be unjust both in the finding of the verdict and the amount awarded. As reiterated in *Pauly* v. *McCarthy*,[9]

"Mere excessiveness of a verdict, without more, does not necessarily show that the verdict was arrived at by passion or prejudice."

The basis of the award here is the injury of the plaintiff and the pain and distress he has suffered ever since, together with the permanent injury to and limitation of the function of his back (he was 47 years old), plus actual damages from loss of earnings from April 5th until December 25th of $400 a month, totaling $3,460. From the trial court's ruling it appears that it was his judgment that fair compensation to plaintiff should not exceed $10,000. There are plenty of cases recognizing that such a proportion (about 41%) of a verdict may be remitted without the whole verdict being bad. Two or three examples should suffice. In *Geary* v. *Cain*,[10] the trial court

[8]50 Colo. 390, 115 P. 901, 39 L. R. A., N. S., 1064, Ann. Cas. 1912C, 504.

[9]109 Utah 431, 184 P. 2d 123, 126; see *Stephens Ranch & Livestock Co.* v. *Union Pac. R. Co.*, 48 Utah 528, 161 P. 459.

[10]69 Utah 340, 255 P. 416.

required remittitur of half of the $20,000 award; in *Pauly* v. *McCarthy,* supra, reduction of a net verdict of $50,000 to $34,500; *Mecham* v. *Foley,*[11] this court ordered reduction of one-half of the general damages.

In *Stephens Ranch & Livestock Co.* v. *Union Pac. R. Co.,*[12] we quoted with approval this language:

" 'Unless it clearly appears from the court record that an excessive verdict in a personal injury action resulted from pejudice or passion rather than an undue liberality exercised by the jury in awarding damages, the trial court's action in remitting a part of the verdict instead of granting a new trial will not be disturbed.' "

and further recited that the trial court

"is in a much better position [than are we] to observe and determine whether a jury was actuated by passion or prejudice, or by both, in returning a verdict for an amount larger than the evidence justifies, or whether the jury was merely mistaken with regard to the amount that should have been allowed."

As stated in *Geary* v. *Cain,* supra [69 Utah 340, 255 P. 423]:

"in case of doubt, the deliberate action of the trial court should prevail. Otherwise this court will sooner or later find itself usurping the functions of both the jury and the trial court, in violation of the spirit, if not the letter, of the Constitution."

Although it does appear that the trial court was well advised in reducing the award from $17,000 to $10,000, we assume from the fact that he denied a new trial that he concluded the verdict was not suffused with passion and prejudice that the defendant did not have a fair trial on the other issues. Upon our review of the record, it cannot be said as a matter of law that the verdict was so grossly excessive that it must necessarily follow that he abused his discretion.

---

[11] See Footnote 7, supra.

[12] 48 Utah 528, 161 P. 459, 462. The court was quoting from a headnote from *Gila Valley, G. N. Ry. Co.* v. *Hall,* 13 Ariz. 270, 112 P. 845.

Defendant also claims that its cause was not fairly tried because of alleged misconduct of the jury. After the verdict was rendered, defendant procured affidavits from three of the jurors, evidently in an abortive attempt to prove a chance verdict and also set out certain other alleged improper conduct. One juror, Aletha Cannon, deposed that while the jurors were considering their verdict, another case against the defendant was mentioned in which damages of $25,000 was awarded and that

"Mention was also made by one of the jurors that * * * the Railroad had only offered plaintiff $700 in settlement of this [the *Wheat*] case."

The jury foreman, Charles Albert Kay, in his affidavit did not agree with the accuracy of this statement. He affirmed that although some matters about settlement were referred to, the jurors recognized that such matter should have nothing to do with their deliberation. Upon the motion for new trial, these jurors were examined and gave about the same testimony orally, except that Kay denied the facts set forth by Mrs. Cannon, said his affidavit did not accurately reflect the facts and that there had been no mention made of an offer of settlement in the *Wheat* case. His affidavit was so amended. An attorney for defendant was sworn and testified in opposition to this concerning a conversation with Mr. Kay in which the latter had not questioned the facts as set out in Kay's affidavit.

The question first to consider in regard to this alleged misconduct of the jury is whether this evidence presented to the court, both the affidavits and the oral testimony, was competent and admissible. With certain exemptions, a juror's affidavit is inadmissible to impeach the jury's verdict. In the case of *People* v. *Ritchie*,[13] this court adopted the California interpretation concerning

[13]12 Utah 180, 42 P. 209, 212.

See also *Morrison* v. *Perry*, 104 Utah 151, 140 P. 2d, *Hepworth* v. *Covey Bros. Amusement Co.*, 97 Utah 205, 91 P. 2d 507.

the statutory enumeration of grounds for a new trial, our former statute having been taken from an identical with their code. The construction involved is that because the statute enumerated a single circumstance (chance verdict) where misconduct of the jury could be proved by the affidavit of a juror, under the maxim "expressio unius, exclusio alterius", it is implied that in no other cases could evidence of other misconduct be proved by such affidavits. Rule 59, U. R. C. P., now supplants the statute and is identical, in the parts here pertinent, with the former statutory provision except that bribery has been added to chance verdicts as a ground that may be shown by a juror's affidavit in seeking a new trial.

The rule prohibiting jurors from impeaching their verdict is founded on sound reasoning and has long been recognized. In *People* v. *Flynn*[14], we said:

"It is well settled that affidavits of jurors will not be received to impeach or question their verdict, nor to show the grounds upon which it was rendered, nor to show their misunderstanding of fact or law, nor that they misunderstood the charge of the court, or the effect of their verdict, nor their opinions, surmises, and processes of reasoning in arriving at a verdict."

The policy behind this statement applies with equal cogency to the oral evidence of jurors proffered upon a hearing of a motion for a new trial. To permit litigants to get jurors to sign affidavits or testify to matters discussed in connection with their functions as jurors would open the door to inquiry into all matter of things which a losing litigant might consider improper; misconceptions of evidence or law, offers of settlement, personal experiences, prejudice against litigants or their causes or the classes to which they belong. It would be an interminable and totally impracticable process. Such post mortems would be productive of no end of mischief and render service as a juror unbearable. If jurors were so circumscribed in their de-

[14] 7 Utah 378, 26 P. 1114, 1116.

liberations, it is likely that judge and counsel would have to be present in the jury room attempting to monitor and regulate their thought and discussions into approved channels. Fortunately, jurors are under no such limitation, but are allowed freedom in their deliberations. As this court wrote in *Ogden L. & I. Railway Company* v. *Jones*:[15]

"It is elementary that a juror may not be heard to impeach his own verdict. * * * The law, * * * wisely provides that a juror may not disclose facts which would go in impeachment of his verdict * * *"

which thought is affirmed by the eminent authority, Mr. Wigmore, who writes,

"* * * the verdict as uttered is the sole embodiment of the jury's action as such without regard to the motives or beliefs which have led up to their act."[16]

Both the affidavits and the oral testimony offered being incompetent, there exists no basis for considering whether the jury was in fact guilty of any misconduct which would have required the granting of a new trial.

Finally, defendant avers that prejudicial error was committed against it by failure to give its requested instructions 2 and 3, by which it requested the court to instruct the jury not to consider any alleged negligence of the defendant in relation to the counter-weights, their construction, maintenance, or manner of operation; defendant's contention being that the evidence conclusively showed that there was no defect therein. Although the plaintiff's complaint alleged such ground of negligence and he sought to adduce testimony concerning it, the court in instruction No. 1, which set out the plaintiff's contentions and the issues, made no mention of this ground of negli-

[15] 51 Utah 62, 168 P. 548, 551.
[16] 8 Wigmore, Evidence (1940) 668.

gence. The only claim of negligence against the defendant submitted to the jury was whether the defendant failed to exercise due care to keep the cable in a reasonably safe condition; further instructions told them that unless this negligence was proved by a preponderance of the evidence, the plaintiff could not recover. Thus, although the court did not expressly give the instructions requested, the matter of the counterbalances and their operation was excluded from the consideration of the jury. Accordingly, the court committed no error in refusing to give the requested instructions.

Judgment affirmed; costs to respondent (plaintiff).

WADE and McDONOUGH, JJ., concur.

WOLFE, Chief Justice (concurring).

I concur. The case is indeed a rarity in which a verdict is arrived at through collective prejudice or passion of a whole or even part of a whole jury. That would mean that the influence of animus against a party to the litigation or the class to which he or it belongs or because of favoritism for a party or his class must have permeated the jury. But when such does influence the verdict, then the fact triers (jury) are as corrupted an instrument for the accomplishment of justice as is a judge who is biased or prejudiced for or against a litigant or his class when he sits on the trial of a case. The very springs of justice are then polluted and a fair and just trial is hardly to be had.

And I agree that the disproportion between possible or probable damages and damages granted must be great indeed for such an ill will, animus or favoritism, as the case may be, to be implied from it. What is usually swept within the orbit of passion or prejudice-induced verdicts are those verdicts which are so large or so small, because of errors of judgment only, compared to what should have been arrived at by reasonably judging minds. But in those cases the deduction that the size of the verdict was due

to passion or prejudice unattended by evidence of facts from which such emotional reactions were in fact present should not be made. I agree that there was not available to the defendants in this case any such evidence; that, therefore, the statement of the court whether included in the judgment of the court or aliunde thereof that the amount of $17,000 showed such influence is without foundation and for that reason must be ignored.

HENRIOD, J., concurs in the result.