339 P.2d 1022

**Ludwig OSTERTAG, Plaintiff and Respondent,**

v.

**Duncan G. LA MONT, Defendant and Appellant.**

**David LA MONT, a minor, by Marjorie La-Mont, his Guardian ad litem, Plaintiff and Appellant,**

v.

**Ludwig OSTERTAG, Defendant and Respondent.**

No. 8983.

Supreme Court of Utah.

May 28, 1959.

E. L. Schoenhals, Salt Lake City, for appellant.

Child, Spafford & Young, Salt Lake City, for respondent.

CROCKETT, Chief Justice.

This case involves two actions for assault and battery. Ludwig Ostertag sued Duncan LaMont; and David LaMont, the latter's 15-year old son, sued Ludwig Ostertag. The cases arose out of a neighborhood altercation precipitated by the misbehavior of David and three other teenage boys in teasing and annoying Mr. Ostertag, a German immigrant who speaks little English, and who was finally provoked to take some measures in self defense.

The actions were consolidated for trial. A jury found the issues generally in favor of Ostertag and against the LaMonts, and awarded the former $140 general damages and $2,000 as punitive damages. Upon motion for a new trial the court ordered that plaintiff consent that the $2,000 award be reduced to $860 or a new trial be granted, to which Ostertag agreed. The jury found that Ostertag had committed a battery on David LaMont, but did not award him any damages. Both of the LaMonts appeal, claiming errors hereinafter discussed.

In view of the jury verdicts we review the evidence in the light most

favorable to Mr. Ostertag.[1]  About 9:30 p. m. on May 19, 1958, he was watering his lawn when the group of boys began amusing themselves by harassing him and included in their pranks throwing rocks at him, one of which struck him in the neck.  He went after them and succeeded in getting hold of David LaMont.  David's version of what happened is that Mr. Ostertag struck him, but the latter claims that he injured himself and got some blood and dirt on his face by falling in a ditch as he attempted to wrench himself free. David did not go home immediately because he didn't want his parents to know that he was involved in another dispute with Mr. Ostertag.  Rather, in the company of the other boys and the father of one he returned to Ostertags to discuss the alleged assault.  Meanwhile David's father, having learned of the incident, came to Ostertag's.  When he saw his son had been mussed up a bit he was considerably disturbed and claims that he asked Ostertag if he had struck the boy and that the latter said yes.  Ostertag denies any such question and says that if the question was asked he did not understand it.  In any event Duncan LaMont proceeded to assault and beat Mr. Ostertag.

The principal attack Duncan LaMont makes upon the jury verdict against him is that the award of $2,000 punitive damages, even as reduced by the trial court to $860, is excessive and is so disproportionate to the compensatory damages awarded that it should not be permitted to stand, citing Falkenburg v. Neff [2] and other cases.  In the Falkenburg case this court sustained an award of $1,500 punitive damages (reduced from $5,000) for an assault where the actual damages awarded were only $362.50.  It is to be noted that the ratio there was approximately four to one, whereas in the instant case it is approximately six to one.  Such difference alone is not decisive.  As with damages for injuries generally, there is no method for exact calculation as to punitive damages, nor is there any precise formula for the relationship of punitive damages to actual damages.  The jury from its advantaged position must necessarily be allowed a broad discretion in such matters.[3] It is true that this court has stated a number of times that the punitive damages must bear some reasonable relationship to actual damages.  This is so because they must not be so disproportionate as to manifest that they were awarded as a result of passion or prejudice, or under miscon-

1. Fleming v. Fleming Felt Company, 7 Utah 2d 293, 323 P.2d 712.
2. 72 Utah 258, 269 P. 1008.

3. Evans v. Gaisford, 122 Utah 156, 247 P. 2d 431; as for statement as to advantages of jury in appraising damages, see Wilson v. Oldroyd, 1 Utah 2d 362, 267 P. 2d 759, 764.

ception of, or in disregard of the law or the evidence. But the relationship of the punitive damages to actual damages awarded is only one of the facts to be considered in determining whether the amount awarded should be sustained.

In appraising the punitive damages to see whether they are so excessive as to require nullification of a verdict, or correction as a matter of law, it is necessary to survey all of the circumstances as disclosed by the evidence, including: any provocation given for the assault; the age, size, strength and vigor of the parties; the relationship in which they stand to each other; the emotions involved; the severity of the assault and the actual injury and damage inflicted.

■ Even though Mr. LaMont was upset by the trouble in which he found his son, that was no justification for him to take it upon himself to administer a beating to Mr. Ostertag. It is undisputed that it was necessary for the latter to expend $140 for doctor and dental bills incident to his injuries. The jury awarded him only this sum but nothing for his pain and suffering, loss of earnings, or for humiliation and injury to his feelings, all of which may properly be considered in awarding damages for such an assault.[4] It is obvious that an award of some further compensatory damages would have been justified. The fact that the verdict gave him nothing except his actual expenditures does not mean that that is all the damage he suffered,[5] nor is it any reason for depriving him of the $860 award of punitive damages. That award could be set aside if it were clearly excessive in view of the evidence as a whole and in comparison to the damages actually sustained. We do not think the award as adjusted by the trial court can be properly so characterized.

■ There is another important factor to consider in determining whether the verdict should be interfered with: that is, the deliberate action of the trial court upon the question of damages in his ruling upon the motion for a new trial. When the trial judge, with his obvious advantages in close contact with the parties and their witnesses has reviewed the situation and given his opinion on the question, it lends some additional verity to the judgment. It will not lightly be disturbed by this court, nor at all unless it is unreasonable in view of the whole record before us.[6]

■ Defendant also argues that the verdict was given under passion and prejudice induced by incompetent evidence objected to by him. This testimony was that David LaMont had thrown garbage and other debris on Ostertag's lawn; that he had on one

---

4. Mecham v. Foley, 120 Utah 416, 235 P. 2d 497.
5. Finney v. Lockhart, 35 Cal.2d 161, 217 P.2d 19.
6. Stephens Ranch & Live Stock Co. v. Union Pacific R. Co., 48 Utah 528, 161 P. 459.

occasion attempted to knock the latter from a tree by throwing rocks at him; and had called him a "dirty German" and other opprobrious epithets. It was LaMont's own counsel who insisted on consolidating the two actions for trial. The above evidence was pertinent as showing the circumstances existing between the parties to explain the reason for Ostertag's conduct relative to the claimed assault; and more importantly, would be relevant on the issue of punitive damages claimed by David in the event the jury had found the issues against Ostertag.[7]

■■■ The jury verdict is attacked because of the statements of several jurors that they awarded substantial punitive damages, not to punish Duncan LaMont for his attack on Mr. Ostertag, but to punish him for his failure to discipline David, and that the latter, of course, is not a valid basis upon which to make an award of punitive damages. It is well settled that comments of the jurors made after they have rendered their verdict will not be received to "show their misunderstanding of fact or law."[8]

The verdict is the sole embodiment of the jury's action without regard to the motives or beliefs which have led up to their act.[9]

To permit litigants to get jurors to sign affidavits or testify to matters discussed in connection with their functions as jurors would open the door into all manner of things which a losing litigant might consider improper and would be an interminable and totally impracticable process. Such post mortems would render service as a juror unbearable, and be productive of no end of mischief.[10]

Further assigned errors relate to the instructions. The first contention is that the court ignored a request to instruct that if Duncan LaMont saw his son in an injured condition and Ostertag admitted striking him the jury could consider such acts as provocation in mitigation of damages even though it would not be justification for an assault. Perusal of the instructions fails to substantiate such contention. The court covered that idea in substance by correctly telling the jury that, "mere words," or even "the fact that one's son may have been assaulted at a prior time * * * [is not] a justification for a battery." However, "such acts * * * may be considered by the jury in determining whether or not punitive damages should be awarded, and if so, the amount."

■■■ Complaint is also made of the refusal to give another request to the effect that punitive damages must not be awarded unless Duncan LaMont committed "an intentional, wilful, malicious attack" upon Mr. Ostertag. There is no necessity that the in-

7. Mecham v. Foley, 120 Utah 416, 235 P. 2d 497.
8. People v. Flynn, 7 Utah 378, 26 P. 1114, 1116.

9. 8 Wigmore, Evidence, 668 (1940).
10. Wheat v. Denver & Rio Grande Western R. Co., 122 Utah 418, 250 P.2d 932.

136

struction given be in the exact language of the request. It is sufficient if the principle of law is accurately stated as applied to the fact situation at hand. There is no dispute whatsoever about the wilfulness of Duncan LaMont's attack. He testified as follows:

"Q. Did you strike Mr. Ostertag for revenge? A. I sure did."

The instruction given by the court conformed to the above requirement. It stated that punitive damages could be awarded only if LaMont committed the assault, "in a wanton, * * * or vicious and uncalled for manner" which, even though not in the usually approved language, was not prejudicial to Mr. LaMont.

In the action by David Lamont, wherein the jury found that Mr. Ostertag had assaulted him but refused to award any damages, objection is made to the court's instructions that David's medical bills, paid by his father, were not to be considered in computing David's damages. This action was by David through his guardian ad litem, and his father was not a party thereto. The father, not David, suffered damages when he necessarily incurred these expenses, and the action for their recovery must be brought, if at all, by him.[11]

Affirmed, costs to respondent

WADE, HENRIOD and McDONOUGH, JJ., and MAURICE HARDING, District Judge, concur.

11. 37 A.L.R. 29 and cases cited therein.